ACCEPTED
02-17-00411-CV
SECOND COURT OF APPEALS
FORT WORTH, TEXAS
12/13/2017 9:53 AM
DEBRA SPISAK
CLERK

No. 02-17-00411-CV

## SECOND COURT OF APPEALS

## FORT WORTH, TEXAS

FILED IN
2nd COURT OF APPEALS
FORT WORTH, TEXAS

12/13/2017 9:53:57 AM

DEBRA SPISAK
Clerk

GHRIST LAW FIRM PLLC, ET. AL.,

Appellants

V.

J. MICHAEL FERGUSON PC, ET. AL.,

Appellees

FROM THE 236TH DISTRICT COURT
TARRANT COUNTY, TEXAS
CAUSE NO. 236-295012-17

## BRIEF OF APPELLANTS

Ian Ghrist
State Bar No. 24073449
ian@ghristlaw.com

Ghrist Law Firm
2735 Villa Creek Drive, Suite 250A
Farmer's Branch, Texas 75234
Ph. (817) 778-4136
Fax (817) 900-2863

ATTORNEY FOR APPELANTS

**ORAL ARGUMENT NOT REQUESTED**

# IDENTITY OF PARTIES AND COUNSEL

| **Appellants** | **Counsel for Appellants** |
|---|---|
| Ghrist Law Firm PLLC | Ian Ghrist |
| Ian Ghrist | Ghrist Law Firm PLLC |
| Blue Moon Realty Group LLC | State Bar No. 24073449 |
| Wizard Funding LLC | ian@ghristlaw.com |
| Neighborhood Partner, Inc. | 2735 Villa Creek Drive, Suite 250A |
| Shawn Coker | Farmer's Branch, Texas 75234 |
| | Phone (817) 778-4136 |
| | Fax (817) 900-2863 |

| **Appellees** | **Counsel for Appellees** |
|---|---|
| J. Michael Ferguson P.C. | J. Michael Ferguson |
| MBH Real Estate LLC | 62 Main St., Suite 310 |
| AFI Loan Servicing LLC | Colleyville, Texas 76034 |
| Anson Financial Inc. | Tel. (817) 267-1008 |
| | Fax (817) 485-1117 |
| | mike@jmichaelferguson.com |
| | Attorney for Plaintiffs |

# TABLE OF CONTENTS

GLOSSARY OF DEFINED TERMS ........................................................................10

IDENTITY OF PARTIES ....................................................................................11

ABBREVIATIONS AND RECORD REFERENCES ...........................................12

STATEMENT OF THE CASE ............................................................................13

STATEMENT REGARDING ORAL ARGUMENT ............................................14

ISSUES PRESENTED........................................................................................15

STATEMENT OF FACTS ..................................................................................16

SUMMARY OF ARGUMENT ...........................................................................27

STANDARD OF REVIEW ................................................................................35

ARGUMENT ....................................................................................................36

I.     OPERATION OF THE TCPA EXPLAINED .....................................................39

II.    MOVANT'S BURDEN ESTABLISHED AS TO THE RIGHT TO
PETITION IN CAUSE NO. 017-287611-16.........................................................41

III.   MOVANT'S BURDEN ESTABLISHED AS TO THE RIGHT OF
ASSOCIATION BECAUSE THE DEFENDANTS COMMUNICATED WITH
EACH OTHER FOR THE PURPOSE OF FACILITATING THE SALE OF
ELMER HERNANDEZ'S HOUSE IN A WAY THAT PROTECTED THE
INTERESTS OF ALL PARTIES ...........................................................................42

IV.    MOVANT'S BURDEN ESTABLISHED AS TO FREE SPEECH
BECAUSE TITLE TO THE PURSELLEY PROPERTY IS A MATTER OF
PUBLIC CONCERN, ALONG WITH ALLEGATIONS THAT AN ATTORNEY
MISAPPROPRIATED FUNDS, AND THE COMMUNICATIONS RELATED
TO THE PROVISION OF A TITLE INSURANCE POLICY BY SENDERA
TITLE, WHICH IS A PRODUCT IN THE MARKETPLACE ...........................43

V.     THE PLAINTIFF LACKED CLEAR AND SPECIFIC EVIDENCE ON
THE CONVERSION CLAIM BECAUSE THE DEPOSIT OF MORTGAGE
PAYOFF FUNDS INTO THE COURT'S REGISTRY WAS NOT WRONGFUL
AND THE FUNDS WERE PROMPTLY RETURNED UPON REQUEST.........45

VI.     THE PLAINTIFF LACKED CLEAR AND SPECIFIC EVIDENCE ON THE CONSPIRACY CLAIM BECAUSE THE PLAINTIFFS DID NOT PROVE AN UNDERLYING TORT OR SHOW ANY INJURY..........................................47

VII.    THE PLAINTIFF LACKED CLEAR AND SPECIFIC EVIDENCE ON THE BREACH OF FIDUCIARY DUTY CLAIM BECAUSE THERE ARE NO DAMAGES AND THE DEFENDANTS DID NOT OWE FIDUCIARY DUTIES TO THE PLAINTIFFS. ..........................................48

VIII.   THE PLAINTIFF LACKED CLEAR AND SPECIFIC EVIDENCE ON THE DECEPTIVE TRADE PRACTICES CLAIM BECAUSE, AMONG OTHER THINGS, THE PLAINTIFFS WERE NOT SEEKING OR ACQUIRING GOODS OR SERVICES FROM THE DEFENDANTS..........................................49

IX.     THE PLAINTIFF LACKED CLEAR AND SPECIFIC EVIDENCE ON THE FRAUDULENT LIEN STATUTE BECAUSE THERE IS NO EVIDENCE OF INTENT TO CAUSE INJURY, ACTUAL INJURY, OR EVEN THAT THE DOCUMENTS WERE WRONGFUL IN ANY WAY. ..........................................50

X.      THE PLAINTIFF LACKED CLEAR AND SPECIFIC EVIDENCE ON THE NEGLIGENCE AND GROSS NEGLIGENCE CLAIMS BECAUSE THE PLAINTIFFS HAD NO DAMAGES, CANNOT SHOW WRONGFULNESS IN THE DEFENDANTS' ACTIONS, AND THE PLAINTIFFS' HAD UNCLEAN HANDS. ..........................................53

XI.     THE PLAINTIFF LACKED CLEAR AND SPECIFIC EVIDENCE ON THE LIBEL CLAIM BECAUSE FERGUSON WAS SUED FOR MISAPPROPRIATION OF FUNDS, WHICH MEANS THAT THE STATEMENT THAT HE HAD BEEN SUED FOR SUCH WAS NOT FALSE, REGARLESS OF THE PENDING AND UNKNOWN OUTCOME OF SUCH LAWSUIT..........................................54

XII.    THE PLAINTIFF LACKED CLEAR AND SPECIFIC EVIDENCE ON THE DECLARATORY JUDGMENT CLAIM BECAUSE THE PLAINTIFF FAILED TO EXPLAIN WHAT KIND OF DECLARATORY RELIEF IS BEING REQUESTED ..........................................56

XIII.   ABSOLUTE DEFENSES PROVEN—PRIMARILY THE JUDICIAL PRIVILEDGE ..........................................56

XIV.    QUALIFIED PRIVILEGES PROVEN—MOST IMPORTANTLY, THE STATEMENTS MADE AFFECTED THE INTERESTS OF THE PUBLISHER AND COMMON INTERESTS OF THE PARTIES .................................................60

XV.    THE DEFENDANTS ALSO SHOWED TRUTH OR SUBSTANTIAL TRUTH, LACK OF REQUISITE FAULT, AND FAIR COMMENT AS DEFENSES TO LIBEL OR AS NEGATING THE ELEMENTS OF LIBEL. ......62

XVI.    THE TRIAL COURT ERRED BY SUSTAINING OBJECTIONS OR SPECIAL EXCEPTIONS TO THE MOTION ON THE GROUNDS THAT THE MOTION DID NOT SPECIFY WHICH CAUSES OF ACTION THE MOTION WAS FILED ON BECAUSE THE CAUSES OF ACTION DO NOT NEED TO ARISE FROM THE TCPA STATEMENTS, BUT RATHER ONLY NEED TO BE EITHER "BASED ON, RELATED TO, OR IN RESPONSE TO" THE TCPA STATEMENTS.................................................................................................66

a.    THE TRIAL COURT'S OPINION THAT TCPA MOTIONS ARE LIMITED TO LIBEL OR DEFAMATION IS INCORRECT AS A MATTER OF LAW AND CLEARLY DID NOT RENDER THE MOTION FRIVILOUS ...........................67

XVII.    THE TRIAL COURT'S OPINION THAT TCPA MOTIONS ARE LIMITED TO LIBEL OR DEFAMATION IS INCORRECT AS A MATTER OF LAW AND CLEARLY DID NOT RENDER THE MOTION FRIVILOUS .........68

XVIII.    THE PLAINTIFFS' CAUSES OF ACTION CLEARLY DID NOT FALL UNDER ANY TCPA STATUTORY EXEMPTIONS, MOST SPECIFICALLY, THE ACTIONS COULD NOT FALL UNDER THE COMMERCIAL SPEECH EXEMPTION BECAUSE GHRIST DID NOT MAKE THE STATEMENTS FOR THE PURPOSE OF SELLING GOODS OR ERVICES TO FERGUSON OR HIS COMPANIES, THE PLAINTIFFS.............................69

XIX.    WHEN THE TRIAL COURT'S ORDER READ THAT "PLAINTIFFS OBJECTIONS TO DEFENDANTS MOTION TO DISMISS ARE SUSTAINED," THAT LANGUAGE WAS NOT INTENDED TO SUSTAIN EACH OF PLAINTIFFS' EXTREMELY VOLUMINOUS EVIDENTIARY OBJECTIONS FILED ON THE DAY OF THE HEARING, NOT DISCUSSED AT THE HEARING, AND THAT DEFENDANT HAD NO OPPORTUNITY TO REVIEW PRIOR TO THE HEARING OR RESPOND TO ...................................................71

XX.    EVEN IF ANY OF PLAINTIFFS' EVIDENTIARY OBJECTIONS HAD A BASIS, DEFENDANTS' SHOULD HAVE BEEN GIVEN AN OPPORTUNITY TO CURE DEFECTS, PARTICULARLY WHEN THE

OBJECTIONS WERE FILED ON THE DAY OF THE HEARING, WERE NOT DISCUSSED AT THE HEARING, AND DEFENDANTS HAD NO OPPORTUNITY TO REVIEW THE OBJECTIONS PRIOR TO THE HEARING DUE TO THEIR TARDY FILING ........................................................75

XXI.    PRAYER .........................................................................77

INDEX TO APPENDIX TO BRIEF OF APPELLANTS ......................................82

# INDEX OF AUTHORITIES

## Cases

*Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503 (Tex. App.—Houston [1st Dist.] 2003, no pet.) ........................................................................................48

*Allen v. Albin*, 97 S.W.3d 655 (Tex. App.--Waco 2002, no pet.) ..................... 71, 72

*Am. Homeowner Pres. Fund, LP v. Pirkle*, 475 S.W.3d 507 (Tex. App.—Fort Worth 2015) ..................................................................................... 30, 44

*Anderson v. Limestone Cty.*, No. 10-07-00174-CV, 2008 Tex. App. LEXIS 5041 (App.—Waco July 2, 2008) ..................................................... 71, 72

*Avery Pharms, Inc. v. Haynes & Boone, LLP*, 2009 Tex. App. LEXIS 769 (Tex. App.—Fort Worth 2009, no. pet.) ........................................................48

*Avila v. Larrea*, 394 S.W.3d 646 (Tex. App.—Dallas 2012, pet. denied) ....... 31, 45

*Bell v. Lee*, 49 S.W.3d 8 (Tex. App.—San Antonio 2001) ........................ 33, 57, 58

*Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477 (Tex. 2015) ...................................34

*Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922 (Tex. 1979) ................... 47, 48

*Choctaw Props., L.L.C. v. Aledo I.S.D.*, 127 S.W.3d 235 (Tex. App.—Waco 2003) ....................................................................................................75

*Cotten v. Weatherford Bancshares, Inc.*, 187 S.W.3d 687 (Tex.App.-Fort Worth 2006, pet. denied) ...............................................................................47

*D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429 (Tex. 2017) .................78

*Deaver v. Desai*, 483 S.W.3d 668 (Tex. App.—Houston [14th Dist.] 2015)... 31, 45

*Elite Auto Body LLC v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191 (Tex. App.—Austin 2017) ..................................................................................... passim

*ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895 (Tex. 2017)... 29, 32, 43, 66

*Fisher v. Detroit Free Press, Inc.*, 158 Mich. App. 409, 404 N.W.2d 765 (1987) .55

*Gaither v. Davis*, 582 S.W.2d 913 (Tex. Civ. App.—Fort Worth 1979) ......... 33, 58

*Gower v. Univ. Behavioral Health of Denton*, No. 02-16-00245-CV, 2017 Tex. App. LEXIS 6746 (App.—Fort Worth July 20, 2017) ........................................75

*Hous. Oilers v. Harris Cty.*, 960 F. Supp. 1202 (S.D. Tex. 1997) ................... 34, 55

*Jenevein v. Friedman*, 114 S.W.3d 743 (Tex. App.—Dallas 2003) ................. 33, 58

*Law Office of David E. Williams, II, P.C. v. Fort Worth Tex. Magazine Venture, LP*, No. 02-10-00373-CV, 2011 Tex. App. LEXIS 5157 (Tex. App.—Fort Worth July 7, 2011, no pet.) (mem. op.) .......................................................................71

*Lawyers Title Co. v. J.G. Cooper Dev., Inc.*, 424 S.W.3d 713 (Tex. App.—Dallas 2014, pet. denied) ........................................................................ 45, 46

*Lippincott v. Whisenhunt*, 462 S.W.3d 507 (Tex. 2015). ..........................40

*McCrann v. Klaneckey*, 667 S.W.2d 924 (Tex. App.—Corpus Christi 1984) ........49

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S. Ct. 2695 (1990). 55, 56, 57, 62

*Moldovan v. Polito*, No. 05-15-01052-CV, 2016 Tex. App. LEXIS 8283 (App.—Dallas Aug. 2, 2016) ................................................................ 70, 71

*Neely v. Wilson*, 418 S.W.3d 52 (Tex. 2013)....................................... 55, 62, 63, 65

*Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71 (Tex. App.—Houston [1st Dist.] 2013) ....................................... 69, 70

*Neyland v. Thompson*, No. 03-13-00643-CV, 2015 Tex. App. LEXIS 3337 (App.—Austin Apr. 7, 2015) ....................................................... 31, 45

*Nw. Mall, Inc. v. Lubri-Lon Int'l, Inc.*, 681 S.W.2d 797 (Tex. App.—Houston [14th Dist.] 1984) ....................................................................53

*Opperman v. Opperman*, No. 07-12-00033-CV, 2013 Tex. App. LEXIS 14867 (App.—Amarillo Dec. 9, 2013) ............................................................71

*Reagan v. Guardian Life Ins. Co.*, 140 Tex. 105, 166 S.W.2d 909 (1942) .............58

*Rehak Creative Servs. v. Witt*, 404 S.W.3d 716 (Tex. App.—Houston [14th Dist.] 2013) ...................................................................... passim

*Schlumberger Ltd. v. Rutherford*, 472 S.W.3d 881 (Tex. App.—Houston [1st Dist.] 2015) ....................................................................78

*Serafine v. Blunt*, 466 S.W.3d 352 (Tex. App.—Austin 2015) .................. 28, 41, 42

*Shaw v. Norwest Bank Tex.*, N.A., NUMBER 13-99-602-CV, 2001 Tex. App. LEXIS 4177 (App.—Corpus Christi June 21, 2001) .........................................75

*Shell Oil Co. v. Writt*, 464 S.W.3d 650 (Tex. 2015)..............................................57

*Sw. Bell Tel. Co. v. Dixon*, 575 S.W.2d 596 (Tex. Civ. App.—San Antonio 1978) ........................................................................ 34, 61

*Tilton v. Marshall*, 925 S.W.2d 672 (Tex.1996)....................................................47

*United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146 (Tex. 1994)................46

*Wells Fargo Bank Nw., N.A. v. RPK Capital SVI, L.L.C.*, 360 S.W.2d 444 (Tex. 1971) ........................................................................45

## Statutes

Tex. Bus. & Com. Code § 17.45 ..........................................................................49

Tex. Civ. Prac. & Rem. Code § 12.002 ................................................................51

Tex. Civ. Prac. & Rem. Code § 27.001 .................................................... 36, 39, 40

Tex. Civ. Prac. & Rem. Code § 27.003 .................................................... 16, 17, 27

Tex. Civ. Prac. & Rem. Code § 27.010 ...................................................................69
Tex. Civ. Prac. & Rem. Code § 27.005 ........................................................ 39, 40
Tex. Civ. Prac. & Rem.Code § 73.002 .................................................................65
Tex. Gov't Code § 51.901 ....................................................................................51

## **Rules**

Tex. R. Civ. P. 166a ..............................................................................................75

## **Treatises**

333 Dorsaneo, Texas Litigation Guide § 333.42 (2017) .......................................40
7-101 Dorsaneo, Texas Litigation Guide § 101.05 (2017).....................................75
Restatement (Second) of Torts § 585 (1977).................................................. passim

# GLOSSARY OF DEFINED TERMS

Texas Citizens Participation Act ("TCPA")

Statements that a legal action is based on, relates to, or is in response to that implicate the right of free speech, the right to petition, or the right of association as defined by the TCPA ("TCPA Statements")

J. Michael Ferguson or J. Michael Ferguson P.C. ("Ferguson")

MBH Real Estate LLC ("MBH Real Estate")

MBH Real Estate LLC and property recovered from Cause Nos. 236-269254-13 and 236-248435-10 (The "MBH Portfolio")

AFI Loan Servicing LLC or Anson Financial Inc. ("Anson")

Neighborhood Partner Inc. ("NPI")

Blue Moon Realty Group LLC ("BMRG")

Wizard Funding LLC ("Wizard")

2420 Purselley Ave, Fort Worth, TX 76112 (The "Subject Property" or the "Purselley Property")

J. Michael Ferguson ("Ferguson")

Deceptive Trade Practices Act ("DTPA")

Shawn Coker; Neighborhood Partner, Inc.; Blue Moon Realty Group LLC, and Wizard Funding LLC are sometimes referred to herein as ("Coker *et. al.*")

# IDENTITY OF PARTIES

Ghrist Law Firm PLLC (Ian Ghrist's law firm)

J. Michael Ferguson PC (J. Michael Ferguson's law firm)

Anson Financial, Inc. (J. Michael Ferguson's wholly-owned mortgage company)

AFI Loan Servicing LLC (J. Michael Ferguson's wholly-owned loan servicing company)

MBH Real Estate LLC (A company that Ghrist claims an interest in that Ferguson formed to hold Coker *et. al.'s* assets recovered from Cause Nos. 236-269254-13 and 236-248435-10 both in Tarrant County, Texas)

Metro Buys Homes LLC (A company owned by David Boles, who is currently in federal prison for running a ponzi-type scheme involving owner-financed houses. This company was in a receivership, Ian Ghrist was the receiver, and Coker *et. al.* were the creditors. Ferguson was Coker's lawyer, but Ferguson has been trying to take Coker's assets.)

Elmer Hernandez (J. Michael Ferguson sold the Purselley Property to Mr. Hernandez and his wife.)

Sendera Title (Sendera Title company handled the sale of Elmer Hernandez's house to a buyer who acquired a title insurance policy after the mortgage payoff funds were deposited into the court's registry in Cause No. 017-287611-16, 17th District Court, Tarrant County, Texas).

Elizabeth Espino, Kathy Montes, and Lucy Olivas are employees of Sendera Title that were sued individually for no discernable reason.

Shawn Coker, Neighborhood Partner Inc., Blue Moon Realty Group LLC, and Wizard Funding LLC were Attorney Ferguson's clients in Cause Nos. 236-269254-13 and 236-248435-10 wherein the Purselley Property was acquired by Coker *et. al.* due to Ghrist's legal work in recovery of assets.

# ABBREVIATIONS AND RECORD REFERENCES

[Vol.#]CR[page#]        Clerk's Record

[Vol.#] RR [Page#]      Reporter's Record

Appx. [Tab#]            Appellants' Appendix

App. Br. [page#]        Appellants' Brief

# STATEMENT OF THE CASE

This is an appeal from a motion to dismiss filed pursuant to Chapter 27 of the Texas Civil Practice and Remedies Code. The motion was filed on 10/16/2017. The motion was heard 11/13/2017. An order denying the motion was signed 11/14/2017.

# STATEMENT REGARDING ORAL ARGUMENT

Appellants do not request oral argument.

# ISSUES PRESENTED

1. Should any of Plaintiffs' claims have been dismissed pursuant to Chapter 27 of the Texas Civil Practice and Remedies Code?

2. Were any of the Plaintiffs' actions exempt from Chapter 27?

3. Did Defendants' meet their initial burden of showing that the action was based on, relates to, or is in response to the party's exercise of the right of free speech, the right to petition, or the right of association?

4. Did Plaintiffs' establish by clear and specific evidence a *prima facie* case for each essential element of their claims?

5. Did Defendants' establish any affirmative defenses by a preponderance of the evidence?

6. Was Plaintiffs' motion to dismiss under Chapter 27 filed solely with intent to delay or frivolous?

7. When the trial court's order read that "Plaintiffs' Objections to Defendants' Motion to Dismiss are sustained" was that meant to sustain Defendants' extremely voluminous evidentiary objections filed on the day of the hearing and not discussed at the hearing, or not?

8. If the portion of the trial court's order reading "Plaintiffs' Objections to Defendants' Motion to Dismiss are sustained" could be interpreted as sustaining the extremely voluminous evidentiary objections filed the morning of the hearing and not discussed at the hearing, then should any of those objections have been sustained?

## STATEMENT OF FACTS

### The Libel Claim

Ian Ghrist wrote a letter to Elmer Hernandez dated February 6th, 2017.[1] In the letter, Ghrist described the allegations made in Cause No. 017-287611-16, including allegations that Ferguson misappropriated funds, discussed the *lis pendens* on file in such case, including the effect of the *lis pendens* on the sale of Mr. Hernandez's house, and suggested that the payoff funds on the mortgage be deposited to the Court's registry rather than paid to Ferguson.[2] Ferguson filed the case at bar against Ghrist alleging that the letter constituted libel *per se*.[3] The letter, however, was based on, related to, or was in response to Ghrist's exercise of the right to petition in Cause No. 017-287611-16 and free speech.[4]

### The Myriad Other Claims

Ferguson also sued Sendera Title Company (the title company that handled the closing of the sale of Elmer Hernandez's house) for violation of the fraudulent lien statute, conversion, conspiracy, breach of fiduciary duty, deceptive trade

---

[1] 2 CR 678.
[2] *Id.*
[3] 1 CR 15-16.
[4] Tex. Civ. Prac. & Rem. Code § 27.003(a).

practices, negligence, and gross negligence.[5] Ferguson also sued three employees of Sendera Title Company for violation of the fraudulent lien statute, conversion, and conspiracy.[6] Ferguson also sued Shawn Coker, Neighborhood Partner Inc. ("NPI"), Blue Moon Realty Group LLC ("BMRG"), and Wizard Funding LLC ("Wizard") for violation of the fraudulent lien statute, conversion, and conspiracy.[7] The conspiracy claims are based on, relate to, or are in response to exercise of the right of association.[8] The remaining claims are based on, relate to, or are in response to exercise of free speech, the right to petition, and the right of association.[9] All claims relate to the sale of Elmer Hernandez's house and statements made in connection therewith.

**Background**

Ferguson and Ghrist are attorneys who used to work together with Shawn Coker, NPI, BMRG, and Wizard as clients.[10] Ferguson and Ghrist recovered forty-one (41) mortgages on behalf of Coker, NPI, BMRG, and Wizard from David Boles and Metro Buys Homes LLC *et. al.* in two lawsuits, Cause Nos. 236-

---

[5] 2 CR 529.
[6] *Id.*
[7] *Id.*
[8] Tex. Civ. Prac. & Rem. Code § 27.003(a).
[9] *Id.*
[10] 1 CR 44-50, 395-400.

269254-13 and 236-248435-10 both in Tarrant County, Texas.[11] In a contingency fee agreement, Coker *et. al.* were to receive 60% of the mortgages or properties, while Ferguson would receive 26.66% and Ghrist would receive 13.33%.[12] When the mortgages were acquired, Attorney Ferguson and his wholly-owned companies, AFI Loan Servicing LLC and Anson Financial Inc. (collectively "Anson"), serviced the loans, collecting payments from the borrowers.[13] After Attorney Ferguson made inconsistent underpayments to Coker, failed to pay Ghrist, provided improper accounting, and refused to allow a neutral, independent third-party to take over handling of the money, Coker *et. al.* threatened Attorney Ferguson with suit to compel turnover of the mortgages and funds that Attorney Ferguson was wrongfully withholding from his client and Ghrist.[14]

Coker and Ferguson then entered into a settlement agreement whereby Ferguson purchased Coker's stake in the mortgages.[15] Coker tried to include Ghrist in the settlement as Ghrist was demanding payment of Ferguson and had joined in the demand for a neutral third party to handle the funds, but Ferguson refused to

---

[11] 1 CR 30.
[12] 1 CR 47-50, 53-55, 115-16, 324-26.
[13] 1 CR 49, 117, 395-99.
[14] 1 CR 47-50, 117, 181, 324, 326, 330-31, 335, 397-399.
[15] 1 CR 46, 168, 171-72; 2 CR 640.

include Ghrist in settlement talks, let alone the settlement itself, thus, causing the dispute being litigated in Cause No. 017-287611-16.[16]

In Cause No. 017-287611-16, *Ghrist et. al. v. Ferguson et. al.*, 17th Dist. Ct., Tarrant County, TX, Ferguson and Ghrist are litigating whether Ghrist acquired a 13.33% interest in MBH Real Estate LLC and property recovered from Cause Nos. 236-269254-13 and 236-248435-10 (The "MBH Portfolio") and whether Ferguson and Ghrist were engaged in a joint venture related to the foregoing or whether the relationship was merely contractual, among other things.[17] Ferguson has acknowledged in writing that Ghrist did acquire an interest in the MBH Portfolio.[18] Accordingly, Ghrist will likely prevail on claims of both equitable and legal title.[19] Regardless, that dispute is being litigated in a different court and should not be re-litigated here.

The gist of Ferguson's lawsuit in the case at bar appears to be that, despite Ferguson having agreed in writing to Ghrist's 13.33% ownership stake in MBH Real Estate LLC and property recovered from Cause Nos. 236-269254-13 and 236-

---

[16] 1 CR 181, 186-192.
[17] 1 CR 124-25; 2 CR 822-23 (the written agreement between Ferguson and Ghrist), 1 CR 53-55, 324-26, 395-99, 406.
[18] 1 CR 124-25; 2 CR 822-23 (the written agreement between Ferguson and Ghrist).
[19] 1 CR 53-55, 124-25, 127-165, 336, 409; 2 CR 822-23 (the written agreement between Ferguson and Ghrist); 1 CR 145, 147, 203 (other documents created or propounded by Ferguson that acknowledge Ghrist's 13.33% ownership stake).

248435-10,[20] Ghrist did not acquire the interest that Ferguson agreed to, and consequently, Ghrist's actions in dealing with the *lis pendens* were wrongful and that Coker, Wizard, BMRG, NPI, Sendera Title, and Sendera Title's employees should all be additionally responsible.[21] This is essentially a dispute between two attorneys about a joint venture between them and involving third-parties like Sendera Title and Coker *et. al.* was completely inappropriate and puerile.

## The Conveyance of the Purselley Property

Elmer Hernandez was a borrower on a mortgage acquired by Ferguson/Ghrist on behalf of Coker *et. al.* from David Boles *et. al.*[22] Elmer Hernandez initiated a sale of 2420 Purselley Ave, Fort Worth, TX 761124 (The "Subject Property" or the "Purselley Property") with Sendera Title Company.[23] Sendera Title Company found the *lis pendens* filed by Ghrist in Cause No. 017-287611-16 and contacted Ghrist about releasing the *lis pendens*.[24] Ghrist agreed to release the *lis pendens* and lien upon deposit of the mortgage payoff funds into the

---

[20] 1 CR 124-25; 2 CR 822-23 (the written agreement between Ferguson and Ghrist); 1 CR 145, 147, 203 (other documents created or propounded by Ferguson that acknowledge Ghrist's 13.33% ownership stake).
[21] 1 CR 11, 15, 20, 25.
[22] 2 CR 680-91; 1 CR 133-34, 306-08; 1 CR 370-71 (Ghrist's affidavit explaining what happened).
[23] 1 CR 373-91.
[24] *Id.*

registry of the court in Cause No. 017-287611-16.[25] Ghrist sent a letter to Elmer Hernandez about the foregoing.[26] Sendera Title also asked Coker *et. al.* to sign a release of judgment.[27] Coker *et. al.* signed the release of judgment.[28] Ferguson alleges that the statements made by the various Defendants in connection with the foregoing were wrongful, that the lien releases signed by Coker and Ghrist were wrongful, and that Ferguson suffered injury[29] because the payoff funds went temporarily into the court's registry on 2/14/2017[30] only to be released to Ferguson a few weeks later on 4/12/2017.[31] Accordingly, even if Ferguson can prove up some cause of action, which he cannot, he received all of the money that he complains of, thus, leaving all Defendants to baffle at why this suit was filed.

Regarding the release of judgment signed by Coker *et. al.*, the judgment was taken May 15th, 2013;[32] the judgment was extinguished and void on Feb. 20th, 2015 as to the Purselley Property when the property was awarded to the judgment creditor by turnover order.[33] Coker *et. al.* acknowledged the foregoing on Feb. 9th,

---

[25] *Id.*
[26] 2 CR 678.
[27] 1 CR 373.
[28] 2 CR 672-73.
[29] 1 CR 11, 15, 20, 25.
[30] 2 CR 850.
[31] 2 CR 845-46, 852; 1 CR 370, ¶ 15 (Ghrist's affidavit stating that the payoff funds were paid to Ferguson).
[32] 2 CR 695-714.
[33] 1 CR 133-34.

2017 in response to Sendera Title's request so as to avoid liability to Elmer Hernandez for wrongful refusal to acknowledge that the turnover order had extinguished any judgment lien.[34] Ferguson's only reason for complaining of the foregoing could be that he intended to fraudulently allege to Elmer Hernandez that the judgment lien was still valid when it clearly was not. Ferguson's lawsuit to protect his wrongful intentions here is utterly groundless. The lien was void and released long before Ferguson bought the judgment from Coker, the lien clearly did not encumber Elmer Hernandez's title, and Coker's acknowledgement of the foregoing was proper in every respect.

Regarding the release of lien signed by Ghrist,[35] that was also done to avoid liability to Elmer Hernandez for the benefit of Coker, Ghrist, and Ferguson.[36] Elmer Hernandez's closing on the sale of his house was stalled by the *lis pendens* on file in Cause No. 017-287611-16.[37] No one could reasonably dispute that Mr. Hernandez was entitled to sell his house, but Ghrist alleged that the proceeds from the sale belonged to Ghrist because Ferguson had misappropriated Ghrist's funds

---

[34] 2 CR 672-73; 1 CR 373-91 (emails with Sendera Title); 1 CR 370-71 (Ghrist's affidavit explaining what happened).
[35] 2 CR 674-75.
[36] 1 CR 370-71.
[37] 1 CR 373-91 (emails with Sendera Title), 2 CR 716, 759, 845.

by more than the amount of the lien proceeds in connection with the joint venture between Ghrist and Ferguson, among other allegations.[38]

**Ferguson's Unclean Hands**

It should be noted that MBH Real Estate LLC was never even the owner of the Purselley Property or Mr. Hernandez's mortgage. Ferguson conveyed the Purselley Property to Metro Buys Homes LLC by trustee's foreclosure deed recorded under Instrument No. D215075534 in the Tarrant County, Texas deed records. Ferguson conveniently left this fact out of his response to the TCPA motion. Ferguson filed his response to the motion on the morning of the hearing such that Ghrist did not have time to review the response and add Instrument No. D215075534 to the record prior to the hearing to correct Ferguson's materially misleading omission of this portion of the chain-of-title on the Purselley Property. Regardless, Ferguson did not and cannot prove that MBH Real Estate LLC ever owned the Purselley Property, which prevents him from proving up any of the myriad claims that he raised in this suit. Because MBH Real Estate LLC never

---

[38] 1 CR 53-55, 145, 147, 203, 222-304 (accountant's report showing funds misappropriated by Ferguson that belong to Ghrist), 397, 409; 2 CR 822-23 (the written agreement between Ferguson and Ghrist).

owned the Purselley Property, the Plaintiffs lack standing to assert the claims asserted.

Ferguson fraudulently seller-financed the property to Elmer Hernandez listing MBH Real Estate LLC as the Grantor, after having previously conveyed the property to Metro Buys Homes LLC. Ferguson, thus, deeded the property to two different Grantees, which is exactly what landed David Boles (the owner of Metro Buys Homes) in federal prison. Ferguson never had authority over Metro Buys Homes LLC (only Ghrist did, as receiver).[39] Accordingly, the release of lien that Ghrist signed was properly signed by Ghrist rather than Ferguson, but that is just one example of many mistakes caused by and arising from Ferguson's inappropriate sale of the property to Elmer Hernandez by an entity that never owned the property to begin with. Fixing Ferguson's mistakes so as to avoid liability to Elmer Hernandez for Ferguson's misconduct has been a tremendous burden on Sendera Title, Ghrist, Coker, and especially Mr. Hernandez.

---

[39] 2 CR 724, 799-801.

**Timeline**

| | |
|---|---|
| February 20th, 2015 | Mortgage note and lien on Purselley Property conveyed to Coker *et. al.* by turnover order.[40] |
| April 10th, 2015 | J. Michael Ferguson conveys the Purselley Property to Metro Buys Homes LLC by trustee's foreclosure deed. Ferguson fraudulently conveyed the property here to Metro Buys Homes LLC even though he should have conveyed it to Coker *et. al.*, being the actual noteholder due to the turnover order.[41] |
| September 16th, 2015 | Ferguson signs a fraudulent special warranty deed on the Purselley Property to Elmer Hernandez on behalf of MBH Real Estate LLC, an entity not in the chain-of-title.[42] |

The Appellants ask for leave to file a certified copy of Instrument Number D215075534 in the Tarrant County, Texas Deed Records so as to cure Ferguson's material omission from the chain-of-title. The certified instrument is attached hereto as Appx. 2. However, the turnover order is in the record,[43] which means that Ferguson cannot carry his burden of proof to show that MBH Real Estate LLC

[40] 1 CR 133-34.
[41] Instrument No. D215075534 filed in the Tarrant County, Texas Real Property Records, Appx. 2.
[42] 2 CR 683.
[43] 1 CR 133-34.

ever acquired title, regardless of whether the Court considers Instrument No.

D215075534.

## SUMMARY OF ARGUMENT

### Movant's Burden

The movant's burden is to show that a "legal action is based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association."[44] The movant's burden in this case was established as to the right to petition, the right of free speech, and the right of association. The TCPA does not require the movant to present testimony or any evidence as the burden may be carried solely based upon consideration of the pleadings as evidence.[45]

### Movant's Burden—Right to Petition

Ferguson accuses Ghrist of libel because Ghrist wrote a letter to Hernandez stating that Ferguson "is the Defendant in a lawsuit involving misappropriation of funds . . . ."[46] Ferguson is the Defendant in Cause No. 017-287611-16 and he has been accused by Ghrist of misappropriating funds in that case.[47] Ghrist has shown that this legal action relates to statements made in Cause No. 017-287611-16 and Ghrist's right to petition therein.

---

[44] Tex. Civ. Prac. & Rem. Code § 27.003 (LexisNexis, Lexis Advance through the 2017 Regular Session and 1st C.S., 85th Legislature).
[45] *Id.*
[46] 2 CR 678 (Letter Ghrist Wrote to Hernandez); 1 CR 15 (Plaintiff's Petition in This Case).
[47] 1 CR 393, 400-02, 404.

If a lawsuit, like this one, is filed in response to allegations being made in another lawsuit (in this case, being Cause No. 017-287611-16 in the 17th District Court) then the movant has carried the movant's burden under the TCPA by showing statements made in response to the right of petition.[48]

### Movant's Burden—Right of Association

The right of association has been broadly defined as applying to communications "between individuals who join together to collectively . . . promote, pursue, or defend common interests."[49] In *Elite Auto Body LLC v. Autocraft Bodywerks, Inc.*,[50] when former employees left for a new company, shared information, and the former employer alleged that the information shared was confidential and should not have been shared, then that sharing of information was held to be a communication between individuals who joined together to collectively promote their business interests, thus, satisfying the movant's TCPA burden on the right of association. In this case, the Defendants shared information

---

[48] *Serafine v. Blunt*, 466 S.W.3d 352, 360 (Tex. App.—Austin 2015) (when one lawsuit is filed in response to another, the movant's TCPA burden is established because the movant has shown that the new lawsuit was filed "in response to" the other lawsuit).
[49] *Id.* at 205.
[50] *Id.*

(emails)[51] and made statements (letter to Elmer Hernandez[52] and lien releases)[53] for the purposes of effectuating the sale of Elmer Hernandez's house in a way that protected the business interests of all involved in the transaction. Accordingly, the statements related to the right of association as the statements were made in connection with Ghrist, Coker, and Sendera Title's employees' attempts to join together to accomplish the sale of Elmer Hernandez's house in a way that protected the interests of all parties concerned.

## Movant's Burden—Free Speech

"The TCPA defines 'exercise of the right of free speech' as 'a communication made in connection with a matter of public concern.' Tex. Civ. Prac. & Rem. Code § 27.001(3) . . . . [A] '[m]atter of public concern' includes an issue related to: (A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace.' *Id.* § 27.001(7)."[54] In this case, the *lis pendens*, Coker *et. al.'s* abstract of judgment, the mortgage lien on the Purselley Property, and the disputed release documents signed by Ghrist and Coker all

---

[51] 1 CR 372-91
[52] 2 CR 678-79.
[53] 2 CR 672-75.
[54] *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898-99 (Tex. 2017).

related to title to the Purselley Property and to the title insurance policy to be provided by Sendera Title. Accordingly, those statements were made in connection with a matter of public concern, being the title to the Purselley Property and the title insurance policy that Sendera Title put into the marketplace.

The Texas legislature enacted a comprehensive statutory recording system for the purpose of putting the public on notice of claims or potential claims affecting real property.[55] In this case, the statements in the emails between Ghrist, Coker, and Sendera Title; the statements made in the releases that are purported to be "fraudulent"; and the statements in the letter from Ghrist to Hernandez all relate to title issues that should be recorded publicly, and as such, are a matter of public concern.

The statements about title to the Purselley Property made between Ghrist, Coker, and Sendera Title's employees were related to a "good, product, or service in the marketplace," specifically the title insurance policy to be provided by Sendera Title to the buyer of Elmer Hernandez's house. The house itself was also a product in the marketplace and the statements made related to liens on the house and how Sendera Title would clear title to the house before issuing a title policy.

---

[55] *Am. Homeowner Pres. Fund, LP v. Pirkle*, 475 S.W.3d 507, 519 (Tex. App.—Fort Worth 2015) (discussing the purpose of the public recording system).

The statements made also related to economic or community well-being. Specifically, the allegation that Attorney Ferguson misappropriated funds is a matter of community and economic well-being. Communications about a lawyer's handling of cases has been held to be a matter of public concern.[56] Statements about the possibility that a property manager has misappropriated funds has been held to be a matter of community and economic well-being.[57]

**Movant's Burden Met as to More Than Just Libel Claim**

Ferguson also alleged, and the trial judge apparently agreed, that the TCPA motion was frivolous because the motion failed to state that it was filed solely on the libel claims,[58] however, the TCPA has been broadly applied to far more than mere defamation and libel. The TCPA has been applied to conversion, civil conspiracy, misappropriation, breach of contract, and many other causes of action.[59] The TCPA inquiry "does not focus on whether . . . conversion and

---

[56] *Deaver v. Desai*, 483 S.W.3d 668, 673 (Tex. App.—Houston [14th Dist.] 2015); *Avila v. Larrea*, 394 S.W.3d 646, 655 (Tex. App.—Dallas 2012, pet. denied).
[57] *Neyland v. Thompson*, No. 03-13-00643-CV, 2015 Tex. App. LEXIS 3337, at *8-9 (App.—Austin Apr. 7, 2015).
[58] 1 RR 16, 27.
[59] *Rehak Creative Servs. v. Witt*, 404 S.W.3d 716, 733 (Tex. App.—Houston [14th Dist.] 2013) (movant's burden on TCPA motion satisfied as to conversion, civil conspiracy, and misappropriation claims); *Elite Auto Body LLC v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191, 194 (Tex. App.—Austin 2017) (TCPA applied to trade-secret misappropriation, violation of Texas Uniform Trade Secrets Act, unfair competition, breach of fiduciary duty, and civil conspiracy).

misappropriation claims arise from the assertedly libelous nature of the . . . statements" because "[t]he statute broadly encompasses a 'cause of action' that 'relates to' free speech."[60] In *ExxonMobile Pipelinne Co. v. Coleman*, the Texas Supreme Court went so far as to apply the TCPA to internal emails about a "private employment matter" because the statements related to a pipeline that could have caused environmental damage, which made the statements a matter of public concern, despite their private, internal, and employment-related nature.[61]

## Plaintiff's Lack of Clear and Specific Evidence and Defendants' Clear Affirmative Defenses

The Plaintiffs did not offer clear and specific evidence of how the releases that were signed were fraudulent, how the Plaintiffs even have standing given that the Plaintiffs never had title to the Subject Property, how the Plaintiffs experienced any injuries given that the Plaintiffs ultimately received all of the payoff funds that the Plaintiffs have complained about, or what the Plaintiffs ultimately seek to accomplish by this suit, other than to harass and annoy Ghrist and Coker because the Plaintiffs are very angry that Ghrist sued them in a separate lawsuit alleging that Ferguson misappropriated funds, among other things.

---

[60] *Rehak*, 404 S.W.3d at 733. (finding "no difficulty" in concluding that the movant's TCPA burden was established where the conversion and misappropriation causes of action "**have a connection**" with a communication related to free speech) (emphasis added).
[61] *ExxonMobil Pipeline Co.*, 512 S.W.3d at 900.

Ferguson's Deceptive Trade Practices Act ("DTPA") claims are utterly frivolous given that none of the Plaintiffs were seeking or acquiring goods or services from any of the Defendants. The buyer of Elmer Hernandez's house was seeking a title insurance policy from Sendera Title company. Ghrist, Coker *et. al.*, and Sendera Title were not selling any goods or services to Ferguson or Ferguson's companies, the Plaintiffs. Ferguson was demanding a payoff on a mortgage from Sendera Title company and was angry that Ghrist's *lis pendens* was preventing that from happening. No one was selling any goods or services to Ferguson or his companies, the Plaintiffs, in the transaction whereby Elmer Hernandez sold the Purselley Ave property.

Several affirmative defenses are clearly shown by the evidence. First, the judicial privilege[62] provides absolute protection from the libel claim because the allegedly libelous statement was merely a statement that Ferguson was sued for misappropriation of funds. Ferguson was, in fact, sued for misappropriation of funds.[63] Ghrist also has attorney immunity, which is an unqualified defense even to

---

[62] *Jenevein v. Friedman*, 114 S.W.3d 743, 747 (Tex. App.—Dallas 2003); *Bell v. Lee*, 49 S.W.3d 8, 10-11 (Tex. App.—San Antonio 2001); *Gaither v. Davis*, 582 S.W.2d 913, 913 (Tex. Civ. App.—Fort Worth 1979); Restatement (Second) of Torts § 585 (1977).
[63] 1 CR 397-411.

conduct alleged to be fraudulent if the conduct is "within the scope of [the attorney's] legal representation."[64]

Further, the allegedly wrongful release of judgment and release of lien are protected by the qualified privilege that applies to protection of interests of the publisher of the statement.[65] Where "offending conduct" is "related to the legitimate interests of the defendant's own operations" the conduct is privileged.[66] In this case, Coker and Ghrist issued the release of judgment and release of lien so as to avoid liability to Elmer Hernandez and to protect Ghrist's and Coker's interests. The conduct was, accordingly, privileged from the various tort claims raised in this suit.

---

[64] *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015).
[65] Restatement (Second) of Torts §§ 594, 596 (1977); *Sw. Bell Tel. Co. v. Dixon*, 575 S.W.2d 596, 599 (Tex. Civ. App.—San Antonio 1978) (investigation of reports of employee misconduct privileged, findings of jury to the contrary disregarded because the existence of the privilege is a matter of law for the Court to decide)
[66] *Hous. Oilers v. Harris Cty.*, 960 F. Supp. 1202, 1208 (S.D. Tex. 1997).

# STANDARD OF REVIEW

A trial court's ruling on a motion to dismiss under the TCPA is reviewed *de novo*. *Schlumberger Ltd. v. Rutherford*, 472 S.W.3d 881, 892 (Tex. App.—Houston [1st Dist.] 2015). A trial court's ruling on evidentiary objections is reviewed for abuse of discretion. *Lewis v. State*, No. 02-16-00179-CR, 2017 Tex. App. LEXIS 5794, at \*26 (App.—Fort Worth June 22, 2017); *Owens-Corning Fiberglas Corp. v. Malone*, 916 S.W.2d 551, 557 (Tex. App.—Houston [1st Dist.] 1996) ("appellant must show that the trial court's ruling was erroneous" and that the error caused improper judgment). Questions of law are subject to *de novo* review. *Taylor v. Lubbock Reg'l MHMR*, No. 07-13-00381-CV, 2015 Tex. App. LEXIS 10392, at \*4 (App.—Amarillo Oct. 7, 2015).

## ARGUMENT

The basis of most claims in this suit is a release of judgment[67] signed by Coker and a release of lien signed by Ghrist.[68] The TCPA has been applied to any "communication" with communication being defined as "the making, or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic."[69] The lien releases themselves were "documents" that were "submitted" for public recording, thus, making them communications under the TCPA. The TCPA has been applied to statements "without regard to whether" the "statements effected . . . misappropriation or misuse of . . . trade secrets or confidential information, or would be constitutionally unprotected."[70] Accordingly, it matters not whether the lien releases in this case, or other statements, form the basis of the causes of action or whether the statements that the judgment was released or the lien was released constituted constitutionally-

---

[67] 2 CR 672-73 (release instrument); 1 CR 11 (Plaintiff's petition alleging wrongfulness of instrument).

[68] 2 CR 674-75 (release instrument); 1 CR 11 (Plaintiff's petition alleging wrongfulness of instrument).

[69] *Elite Auto Body*, 520 S.W.3d at 204. (referencing Tex. Civ. Prac. & Rem. Code § 27.001(1)).

[70] *Id.*

protected speech or not, at least for purposes of the movant meeting the movant's initial burden under the TCPA.[71]

The movant need only show that statements were made, that those statements have some connection to the various causes of action, and that the statements have some relation to free speech, the right to petition, or the right of association, with all of the foregoing being broadly defined to effectuate the purpose of the statute.

For example, when Ghrist stated in the release of lien that the lien had been released, that statement had a connection to Ghrist's claims, under his right of petition, raised in Cause No. 017-287611-16 because Ghrist alleged in such suit that MBH Real Estate LLC was the product of a joint venture between Ghrist and Ferguson, and that Ghrist's 13.33% interest in MBH Real Estate LLC should be protected from potential liability to Elmer Hernandez by release of the lien on Elmer Hernandez's house upon payoff of the mortgage.

All of the Defendants were engaged in the right of association by joining together in communications for the purpose of selling Elmer Hernandez's house to

---

[71] *Id.* at 204-05 (pointing out that whether the speech was constitutionally protected or not was not relevant to the movant's initial burden, but rather only relevant to the "second part" of the analysis, in which the nonmovant must establish the claim).

a buyer with a title insurance policy in a way that protected the legal interests of all parties involved. If Coker had not signed the release of judgment, then Coker would have incurred liability to Hernandez. Ghrist similarly would have incurred liability to Hernandez by failing to assist in the release of the lien. Accordingly, whether the conduct was wrongful or not, the conduct was part of an association of persons for the purpose of protecting those person's interests. Sendera Title company is in the business of insuring title to real property and joined in communications with Ghrist and Coker to further Sendera Title's business operations.

Moreover, there is also a connection to the right of free speech because the nature of the public statutory recording system is such that statements affecting title, like title to the Purselley Property, are matters of public concern. Additionally, statements about an attorney's misappropriation of funds are a matter of public concern. Finally, statements about the quality or nature of title to real property are related to a product or service in the marketplace, namely, a title insurance policy provided by Sendera Title upon payoff of the mortgage lien on the Purselley Ave property.

## I.  OPERATION OF THE TCPA EXPLAINED

The basic operation of the TCPA is straightforward: If, as here, a legal action "is based on, relates to, or is in response to the party's exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association," then the claim is subject to a motion to dismiss that must be granted unless the respondent can establish "by clear and specific evidence a prima facie case for each essential element" of his or her claim. [72] Furthermore, if the movant can establish an affirmative defense by a preponderance of the evidence, the motion must be granted.[73] The movant's burden of showing that some statements have some relation to the right of free speech, right to petition, or the right of association is sometimes referred to as the first prong, step, or stage. The nonmovant's burden of clear and specific evidence of each cause of action is sometimes referred to as the second prong, step, or stage. The affirmative defenses shown by movant are sometimes referred to as the third prong, step, or stage.

Matters of public concern include issues related to "environmental, economic, or community well-being" and "a good, product, or service in the marketplace."[74]

---

[72] Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b), (c) (West 2013) (emphasis added).
[73] *Id.* at § 27.005(d).
[74] *Id.* at 27.001(7).

The Texas Supreme Court has interpreted "matters of public concern" broadly.[75] The TCPA defines "exercise of the right of association" broadly to mean "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests."[76]

Standards for Granting or Denying the Motion to Dismiss Under the TCPA. In general, the court must grant a motion under the TCPA and dismiss the action within the 30-day window if the movant shows by a preponderance of the evidence that the action is based on, relates to, or is in response to the party's exercise of the right of free speech, the right to petition, or the right of association.[77] The claimant may avoid dismissal, however, by establishing through "clear and specific evidence" a prima facie case for each essential element of the claim in question.[78] Even if the claimant makes the required showing of clear and specific evidence for each essential element of the claim, the movant may nevertheless obtain dismissal if it establishes by a preponderance of the evidence each essential element of a valid defense to the claim.[79]

---

[75] *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015).
[76] Tex. Civ. Prac. & Rem. Code § 27.001(2).
[77] Tex. Civ. Prac. & Rem. Code § 27.005(b).
[78] Tex. Civ. Prac. & Rem. Code § 27.005(c); 20-333 Dorsaneo, Texas Litigation Guide § 333.42 (2017).
[79] Tex. Civ. Prac. & Rem. Code § 27.005(d).

## II.  MOVANT'S BURDEN ESTABLISHED AS TO THE RIGHT TO PETITION IN CAUSE NO. 017-287611-16

Ferguson accuses Ghrist of libel because Ghrist wrote a letter to Hernandez stating that Ferguson "is the Defendant in a lawsuit involving misappropriation of funds . . . ."[80] Ferguson is the Defendant in Cause No. 017-287611-16 and he has been accused by Ghrist of misappropriating funds in that case.[81] Ghrist has shown that this legal action relates to statements made in Cause No. 017-287611-16 and Ghrist's right to petition therein.

If a lawsuit, like this one, is filed in response to allegations being made in another lawsuit (in this case, being Cause No. 017-287611-16 in the 17th District Court) then the movant has carried the movant's burden under the TCPA by showing statements made in response to the right of petition.[82]

---

[80] 2 CR 678 (Letter Ghrist Wrote to Hernandez); 1 CR 15 (Plaintiff's Petition in This Case).
[81] 1 CR 393, 400-02, 404.
[82] *Serafine*, 466 S.W.3d at 360. (when one lawsuit is filed in response to another, the movant's TCPA burden is established because the movant has shown that the new lawsuit was filed "in response to" the other lawsuit).

### III. MOVANT'S BURDEN ESTABLISHED AS TO THE RIGHT OF ASSOCIATION BECAUSE THE DEFENDANTS COMMUNICATED WITH EACH OTHER FOR THE PURPOSE OF FACILITATING THE SALE OF ELMER HERNANDEZ'S HOUSE IN A WAY THAT PROTECTED THE INTERESTS OF ALL PARTIES

The right of association has been broadly defined as applying to communications "between individuals who join together to collectively . . . promote, pursue, or defend common interests."[83] In *Elite Auto Body LLC v. Autocraft Bodywerks, Inc.*,[84] when former employees left for a new company, shared information, and the former employer alleged that the information shared was confidential and should not have been shared, then that sharing of information was held to be a communication between individuals who joined together to collectively promote their business interests, thus, satisfying the movant's TCPA burden on the right of association.

In this case, the Defendants shared information (emails)[85] and made statements (letter to Elmer Hernandez[86] and lien releases)[87] for the purposes of effectuating the sale of Elmer Hernandez's house in a way that protected the business interests of all involved in the transaction. Accordingly, the statements related to the right of

---

[83] *Id.* at 205.
[84] *Id.*
[85] 1 CR 372-91
[86] 2 CR 678-79.
[87] 2 CR 672-75; 1 CR 370-71 (Ghrist's affidavit explaining what happened).

BRIEF OF APPELLANTS

association as the statements were made in connection with Ghrist, Coker, and Sendera Title's employees' attempts to join together to accomplish the sale of Elmer Hernandez's house in a way that protected the interests of all parties concerned.

**IV. MOVANT'S BURDEN ESTABLISHED AS TO FREE SPEECH BECAUSE TITLE TO THE PURSELLEY PROPERTY IS A MATTER OF PUBLIC CONCERN, ALONG WITH ALLEGATIONS THAT AN ATTORNEY MISAPPROPRIATED FUNDS, AND THE COMMUNICATIONS RELATED TO THE PROVISION OF A TITLE INSURANCE POLICY BY SENDERA TITLE, WHICH IS A PRODUCT IN THE MARKETPLACE**

"The TCPA defines 'exercise of the right of free speech' as 'a communication made in connection with a matter of public concern.' Tex. Civ. Prac. & Rem. Code § 27.001(3) . . . . [A] ''[m]atter of public concern' includes an issue related to: (A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace.' *Id.* § 27.001(7)."[88] In this case, the *lis pendens*, Coker *et. al.'s* abstract of judgment, the mortgage lien on the Purselley Property, and the disputed release documents signed by Ghrist and Coker all related to title to the Purselley Property and to the title insurance policy to be

---

[88] *ExxonMobil Pipeline Co.*, 512 S.W.3d at 898-99.

provided by Sendera Title. Accordingly, those statements were made in connection with a matter of public concern, being the title to the Purselley Property and the title insurance policy that Sendera Title put into the marketplace.

The Texas legislature enacted a comprehensive statutory recording system for the purpose of putting the public on notice of claims or potential claims affecting real property.[89] In this case, the statements in the emails between Ghrist, Coker, and Sendera Title; the statements made in the releases that are purported to be "fraudulent"; and the statements in the letter from Ghrist to Hernandez all relate to title issues that should be recorded publicly, and as such, are a matter of public concern.

The statements about title to the Purselley Property made between Ghrist, Coker, and Sendera Title's employees were related to a "good, product, or service in the marketplace," specifically the title insurance policy to be provided by Sendera Title to the buyer of Elmer Hernandez's house. The house itself was also a product in the marketplace and the statements made related to liens on the house and how Sendera Title would clear title to the house before issuing a title policy.

---

[89] *Am. Homeowner Pres. Fund, LP v. Pirkle*, 475 S.W.3d 507, 519 (Tex. App.—Fort Worth 2015) (discussing the purpose of the public recording system).

The statements made also related to economic or community well-being. Specifically, the allegation that Attorney Ferguson misappropriated funds is a matter of community and economic well-being. Communications about a lawyer's handling of cases has been held to be a matter of public concern.[90] Statements about the possibility that a property manager has misappropriated funds has been held to be a matter of community and economic well-being.[91]

## V. THE PLAINTIFF LACKED CLEAR AND SPECIFIC EVIDENCE ON THE CONVERSION CLAIM BECAUSE THE DEPOSIT OF MORTGAGE PAYOFF FUNDS INTO THE COURT'S REGISTRY WAS NOT WRONGFUL AND THE FUNDS WERE PROMPTLY RETURNED UPON REQUEST.

Conversion is the "unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights."[92] To establish a claim for conversion, a plaintiff must prove that:

1. The plaintiff owned or had possession of the property or entitlement to possession;

---

[90] *Deaver v. Desai*, 483 S.W.3d 668, 673 (Tex. App.—Houston [14th Dist.] 2015); *Avila v. Larrea*, 394 S.W.3d 646, 655 (Tex. App.—Dallas 2012, pet. denied).
[91] *Neyland v. Thompson*, No. 03-13-00643-CV, 2015 Tex. App. LEXIS 3337, at *8-9 (App.—Austin Apr. 7, 2015).
[92] *Lawyers Title Co. v. J.G. Cooper Dev., Inc.*, 424 S.W.3d 713, 718 (Tex. App.—Dallas 2014, pet. denied) (citing *Wells Fargo Bank Nw., N.A. v. RPK Capital SVI, L.L.C.*, 360 S.W.2d 444, 447 (Tex. 1971))).

2. The defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner;
3. The plaintiff demanded return of the property; and
4. The defendant refused to return the property[93]

The plaintiff also must establish it was injured by the conversion.[94]

In this case, the payoff funds went temporarily into the court's registry on 2/14/2017[95] only to be released to Ferguson a few weeks later on 4/12/2017.[96] Accordingly, the Plaintiffs could not have suffered any injury. Moreover, the undisputed evidence shows that when the Plaintiffs demanded payment of the payoff funds, Ghrist signed a release of the *lis pendens* and an agreed order allowing the Plaintiffs to withdraw the payoff funds from the Court's registry. Accordingly, regardless of whether the placement of the funds in the Court's registry was wrongful, the funds were promptly returned upon request,[97] thus, negating conversion. Additionally, the placement of the funds into the Court's registry was not wrongful, but rather proper in all respects.

---

[93] *Id.*
[94] *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147 (Tex. 1994).
[95] 2 CR 850.
[96] 2 CR 845-46, 852; 1 CR 370, ¶ 15 (Ghrist's affidavit stating that the payoff funds were paid to Ferguson).
[97] 2 CR 845-46, 852; 1 CR 370, ¶ 15 (Ghrist's affidavit stating that the payoff funds were paid to Ferguson).

## VI. THE PLAINTIFF LACKED CLEAR AND SPECIFIC EVIDENCE ON THE CONSPIRACY CLAIM BECAUSE THE PLAINTIFFS DID NOT PROVE AN UNDERLYING TORT OR SHOW ANY INJURY.

An actionable civil conspiracy is a combination by "two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means."[98]

The essential elements of a civil conspiracy are:

(1) two or more persons;
(2) an object to be accomplished;
(3) a meeting of the minds on the object or course of action;
(4) one or more unlawful, overt acts; and
(5) damages as the proximate result."[99]

A defendant's liability for conspiracy depends on "participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable."[100] Recovery for civil conspiracy is not based on the conspiracy but on the underlying tort.[101] Once a civil conspiracy is proven, each coconspirator

---

[98] *Cotten v. Weatherford Bancshares, Inc.*, 187 S.W.3d 687, 701 (Tex.App.-Fort Worth 2006, pet. denied).
[99] *Id.*
[100] *Id.*; *see also Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922, 925 (Tex.1979) ("It is not the agreement itself, but an injury to the plaintiff resulting from an act done pursuant to the common purpose that gives rise to the cause of action.").
[101] *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex.1996) (orig.proceeding) (op. on reh'g).

"is responsible for all acts done by any of the conspirators in furtherance of the unlawful combination."[102]

In this case, the Plaintiffs received all of the payoff funds,[103] and accordingly suffered no injury. Moreover, the Plaintiffs failed to prove up any underlying tort that the conspiracy could be based upon. The Plaintiffs failed to show that the deposit of the payoff funds into the Court's registry, only to be paid to the Plaintiffs a few weeks later was wrongful in some way.

## VII. THE PLAINTIFF LACKED CLEAR AND SPECIFIC EVIDENCE ON THE BREACH OF FIDUCIARY DUTY CLAIM BECAUSE THERE ARE NO DAMAGES AND THE DEFENDANTS DID NOT OWE FIDUCIARY DUTIES TO THE PLAINTIFFS.

The elements for the cause of action of breach of fiduciary duty are:

1. Existence of fiduciary duty,
2. Breach of that duty, and
3. Causation and damages.[104]

In this case, the Plaintiffs did not demonstrate that any of the Defendants owed fiduciary duties to the Plaintiffs, that any duty was breached, or that the Plaintiffs suffered any damages. In fact, the Plaintiffs received the money that they complain

---

[102] *Carroll*, 592 S.W.2d at 926.

[103] 2 CR 845-46, 852; 1 CR 370, ¶ 15 (Ghrist's affidavit stating that the payoff funds were paid to Ferguson).

[104] *Avery Pharms, Inc. v. Haynes & Boone, LLP*, 2009 Tex. App. LEXIS 769, *22 (Tex. App.—Fort Worth 2009, no. pet.) (citing *Abetter Trucking Co. v. Arizpe*, 113 S.W.3d 503, 508 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

of, which makes the Defendants wonder why this suit was filed, other than to harass and annoy Ghrist, Coker, Sendera Title, and Sendera Title's employees.

**VIII. THE PLAINTIFF LACKED CLEAR AND SPECIFIC EVIDENCE ON THE DECEPTIVE TRADE PRACTICES CLAIM BECAUSE, AMONG OTHER THINGS, THE PLAINTIFFS WERE NOT SEEKING OR ACQUIRING GOODS OR SERVICES FROM THE DEFENDANTS**

In this case the claim is utterly without merit given that the Plaintiffs did not "seek or acquire by purchase or lease, any goods or services."[105]

Related to the sale of the house on Purselly Drive, Elmer Hernandez sought to sell the house and the buyer of the house sought to acquire title insurance from Sendera Title Company. The Plaintiffs, however, were not purchasing or leasing any goods or services from Sendera Title Company or any of the Defendants in connection with this transaction. The Plaintiffs sent a payoff quote on a mortgage to the Sendera Title. The Plaintiffs were not buying anything from the Defendants in connection with the sale of the Purselley Property.

The Plaintiffs also failed to offer evidence of which portions of the DTPA were violated, how they were violated, or how any injuries were suffered as a result.

---

[105] Tex. Bus. & Com. Code § 17.45 (LexisNexis, Lexis Advance through the 2017 Regular Session and 1st C.S., 85th Legislature); *McCrann v. Klaneckey*, 667 S.W.2d 924, 926 (Tex. App.—Corpus Christi 1984).

The DTPA claim is groundless in fact and law. According to Tex. Bus. &

Com. Code § 17.50(c), the Defendants should be awarded reasonable and

necessary attorney's fees and court costs.

**IX.   THE PLAINTIFF LACKED CLEAR AND SPECIFIC EVIDENCE ON THE FRAUDULENT LIEN STATUTE BECAUSE THERE IS NO EVIDENCE OF INTENT TO CAUSE INJURY, ACTUAL INJURY, OR EVEN THAT THE DOCUMENTS WERE WRONGFUL IN ANY WAY.**

The statute applies to fraudulent court records or fraudulent liens or claims.

Section 51.901 of the Texas Government Code lists liens or claims as being

fraudulent where:

"(1)  the document is a purported judgment or other document purporting to memorialize or evidence an act, an order, a directive, or process of:
(A)  a purported court or a purported judicial entity not expressly created or established under the constitution or the laws of this state or of the United States; or
(B)  a purported judicial officer of a purported court or purported judicial entity described by Paragraph (A);
(2)  the document or instrument purports to create a lien or assert a claim against real or personal property or an interest in real or personal property and:
(A)  is not a document or instrument provided for by the constitution or laws of this state or of the United States;
(B)  is not created by implied or express consent or agreement of the obligor, debtor, or the owner of the real or personal property or an interest in the real or personal property, if required under the laws of this state, or by implied or express consent or agreement of an agent, fiduciary, or other representative of that person; or
(C)  is not an equitable, constructive, or other lien imposed by a court with jurisdiction created or established under the constitution or laws of this state or of the United States; or

(3)  the document or instrument purports to create a lien or assert a claim against real or personal property or an interest in real or personal property and the document or instrument is filed by an inmate or on behalf of an inmate."[106]

The Plaintiffs offered no evidence of any making, presenting, or use of any document or record with

"(1)  knowledge that the document or other record is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property;

(2)  intent that the document or other record be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of this state or the United States or another entity listed in Section 37.01, Penal Code, evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and

(3)  intent to cause another person to suffer:

- o  (A)  physical injury;
- o  (B)  financial injury; or
- o  (C)  mental anguish or emotional distress."[107]

<u>No Evidence</u>. The Defendants have no evidence of any of the elements of this claim. Specifically, there is no evidence that any Defendants had knowledge that a document was a fraudulent court record or a fraudulent lien or claim, intent that the document be given the same legal effect as a court record or document of a

---

[106] Tex. Gov't Code § 51.901 (LexisNexis, Lexis Advance through the 2017 Regular Session and 1st C.S., 85th Legislature).
[107] *See* Tex. Civ. Prac. & Rem. Code § 12.002 (LexisNexis, Lexis Advance through the 2017 Regular Session and 1st C.S., 85th Legislature).

court created by or established under the constitution or laws of this state or other applicable entity, or that there was intent to cause another person to suffer injury.

The claims alleged simply fail to meet any requirements of the statute, but particularly the requirement that the claimant have intent that the document be given the legal effect of a court record as there was no such intent to draft a document of a court or other judicial entity and the claims did not purport to be claims established by any Court, but rather just claims being litigated in Court, namely the 17th District Court in Cause No. 017-287611-16.

The Plaintiffs further failed to offer any evidence of instruments that meet the statutory definition of fraudulent instruments because the only instruments complained of are instruments describing disputed claims or claims to be resolved in pending litigation. The *lis pendens* certainly referenced claims that were in dispute, but those claims can hardly be considered "fraudulent" where the legitimacy of the claims depends on the outcome of pending litigation.

Also, there can be no intent to cause injury or mental distress where the intent was clearly to protect Ghrist and Coker from liability to Elmer Hernandez. Where the lien release and judgment release were signed for the purpose of avoiding liability to Elmer Hernandez and protecting the interests of Ghrist and Coker, no fraudulent intent can be inferred. Moreover, the releases were proper because the turnover order extinguished the judgment lien long before Ferguson bought

Coker's interests in the assets and because Ferguson agreed in writing to Ghrist's 13.33% stake in MBH Real Estate LLC and must be estopped from asserting otherwise. Additionally, Ferguson's unclean hands in conveying the property to Elmer Hernandez by MBH Real Estate LLC when Metro Buys Homes LLC was, in fact, the owner must be considered to vitiate any fraud claims and to show that Ferguson and the Plaintiffs lack standing to complain.

There are also no damages because the *lis pendens* was ultimately released and the funds were ultimately disbursed to the Plaintiffs. Accordingly, regardless of the other elements, the Plaintiff cannot show any injury.

## X. THE PLAINTIFF LACKED CLEAR AND SPECIFIC EVIDENCE ON THE NEGLIGENCE AND GROSS NEGLIGENCE CLAIMS BECAUSE THE PLAINTIFFS HAD NO DAMAGES, CANNOT SHOW WRONGFULNESS IN THE DEFENDANTS' ACTIONS, AND THE PLAINTIFFS' HAD UNCLEAN HANDS.

The elements of negligence are the existence of a duty on the part of one party to another, a breach of that duty, and damages proximately caused by the breach of that duty.[108]

---

[108] *Nw. Mall, Inc. v. Lubri-Lon Int'l, Inc.*, 681 S.W.2d 797, 802 (Tex. App.—Houston [14th Dist.] 1984).

In this case, the Plaintiffs failed to show that the Defendants owed them a duty, that the duty was breached, and that any damages were suffered, or proximately caused.

The facts in this case, where Ghrist and Coker signed proper releases to accomplish the sale of Elmer Hernandez's house and the mortgage payoff funds went temporarily into the Court's registry due to a *lis pendens*, only to be ultimately paid to the Plaintiffs, just utterly fails to factually establish a claim for negligence.

Moreover, Ferguson's unclean hands in wrongfully conveying property that MBH Real Estate LLC did not own to Elmer Hernandez negates any claims of the Plaintiffs as MBH Real Estate LLC never owned the property to begin with.

**XI.  THE PLAINTIFF LACKED CLEAR AND SPECIFIC EVIDENCE ON THE LIBEL CLAIM BECAUSE FERGUSON WAS SUED FOR MISAPPROPRIATION OF FUNDS, WHICH MEANS THAT THE STATEMENT THAT HE HAD BEEN SUED FOR SUCH WAS NOT FALSE, REGARLESS OF THE PENDING AND UNKNOWN OUTCOME OF SUCH LAWSUIT.**

The libel claim fails due to the substantially true nature of the allegation that Ferguson was sued for misappropriating funds. He was sued for that regardless of whether he prevails in the suit or not. See Section XV of this brief for a full breakdown of the truth defense.

"Statements that are not verifiable as false cannot form the basis of a defamation claim."[109] An opinion that is "not reasonably capable of defamatory meaning" is not actionable.[110] "A defamatory communication may consist of a statement in the form of an opinion, but a statement of this nature is actionable only if it implies the allegation of undisclosed defamatory facts as the basis for the opinion."[111] Moreover, "a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection."[112] "[T]here are no standards for objective truth of statements of evaluation like 'inadequate,' 'obsolete,' or 'unfit.'"[113]

In this case, the statements made were opinion without defamatory meaning and there was no implication of undisclosed defamatory facts. Moreover, because the statements related to a matter of public concern, mainly claims affecting or potentially affecting the public deed recording system and interests established therein, those statements receive full constitutional protection under the First Amendment.[114]

---

[109] *Neely v. Wilson*, 418 S.W.3d 52, 62 (Tex. 2013) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21, 110 S. Ct. 2695, 2707 (1990)).
[110] *Fisher v. Detroit Free Press, Inc.*, 158 Mich. App. 409, 414, 404 N.W.2d 765, 768 (1987).
[111] Restatement (Second) of Torts § 566 (1977).
[112] *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 3, 110 S. Ct. 2695, 2697 (1990).
[113] *Hous. Oilers v. Harris Cty.*, 960 F. Supp. 1202, 1208 (S.D. Tex. 1997).
[114] *Milkovich*, 497 U.S. 1.

Finally, the allegedly libelous statements are not verifiable as false because the veracity of the statements is currently being litigated in a different court. Accordingly, no libel claim can be based on the statements.

## XII. THE PLAINTIFF LACKED CLEAR AND SPECIFIC EVIDENCE ON THE DECLARATORY JUDGMENT CLAIM BECAUSE THE PLAINTIFF FAILED TO EXPLAIN WHAT KIND OF DECLARATORY RELIEF IS BEING REQUESTED

The Plaintiff has wholly failed to explain what kind of declaratory relief the Plaintiff wants from this Court. Moreover, any declaratory relief that could be litigated is already being litigated in Cause No. 017-287611-16, *Ghrist Law Firm et. al. v. J. Michael Ferguson et. al.*, 17th Judicial District Court, Tarrant County, Texas.

## XIII. ABSOLUTE DEFENSES PROVEN—PRIMARILY THE JUDICIAL PRIVILEDGE

"An attorney at law is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of, a judicial proceeding in which he participates as counsel, if it has some relation to the proceeding."[115] "A party to a private litigation or a private prosecutor or defendant

---

[115] *Id.* at § 586.

in a criminal prosecution is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding."[116] "A witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as a part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding."[117] Statements "made in the course of a judicial or quasi-judicial proceeding" are absolutely privileged.[118]

> Communications in the due course of a judicial proceeding will not serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they are made." *James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982). This absolute privilege extends to a communication "preliminary to a proposed judicial proceeding … if it has some relation to the proceeding." *Id.* at 917 (quoting RESTATEMENT (SECOND) OF TORTS § 588 (1981)). Whether a statement is made in contemplation of a judicial proceeding is a question of law. *Thomas v. Bracey*, 940 S.W.2d 340, 343 (Tex. App.-San Antonio 1997, no writ). '**All doubt should be resolved in favor of the communication's relation to the proceeding**.'"[119]

---

[116] *Id.* at § 587.
[117] *Id.* at § 588.
[118] *Shell Oil Co. v. Writt*, 464 S.W.3d 650, 657 (Tex. 2015).
[119] *Bell v. Lee*, 49 S.W.3d 8, 10-11 (Tex. App.—San Antonio 2001) (emphasis added).

"We therefore hold that **the privilege attaches if the statement has some relationship to a contemplated proceeding, regardless of whether it in fact furthers the representation**."[120] "[C]ommunication in the course of a judicial proceeding is absolutely privileged whether relevant or not."[121]

> "The matter to which the privilege does not extend must be so palpably wanting in relation to the subject-matter of the controversy that no reasonable man can doubt its irrelevancy and impropriety. In order that matter alleged in a pleading may be privileged, it need not be in every case material to the issues presented by the pleadings. It must, however, be legitimately related thereto, or so pertinent to the subject of the controversy that it may become the subject of inquiry in the course of the trial." Id. (emphasis added) (quoting *Taylor v. Iowa Park Gin Co.*, 199 S.W. 853, 855 (Tex. Civ. App.-Galveston 1917, no writ)). Subsequently, this Court addressed a related issue, holding that **the privilege can extend to statements made out of court** so long as they bear some relation to the proceeding. *Russell v. Clark*, 620 S.W.2d 865, 868 (Tex. Civ. App.-Dallas 1981, writ ref'd n.r.e.). We held that "the privilege applies to any statement that bears some relation to an existing or proposed judicial proceeding," adding, "All doubt should be resolved in favor of its relevancy." *Russell*, 620 S.W.2d at 870."[122]

"[T]he rule of nonliability prevails even though the statement was not relevant, pertinent and material to the issues involved in the case."[123]

---

[120] *Id.* at 11 (emphasis added).
[121] *Gaither v. Davis*, 582 S.W.2d 913, 913 (Tex. Civ. App.—Fort Worth 1979).
[122] *Jenevein v. Friedman*, 114 S.W.3d 743, 747 (Tex. App.—Dallas 2003) (emphasis added).
[123] *Reagan v. Guardian Life Ins. Co.*, 140 Tex. 105, 111, 166 S.W.2d 909, 912 (1942).

In this case, all statements made were absolutely privileged as they certainly had some relationship to a pending proceeding, namely Cause No. 017-287611-16, *Ghrist Law Firm et. al. v. J. Michael Ferguson et. al.*, 17th Judicial District Court, Tarrant County, Texas. The absolute privilege covers all statements by Ghrist, Ghrist Law Firm, Coker, Neighborhood Partner, Inc., and Blue Moon Realty Group, LLC, as all of those parties were either parties to the 17th Ct. suit, attorneys for parties, law firms for the parties, or were witnesses to the suit making statements with some connection to the suit.[124] Coker, for example, gave a deposition in the suit and was the client that Ghrist and Ferguson jointly represented in the recovery of all assets in dispute in the underlying causes.

The First Amendment protects the right to petition and, in this case, the statements were sufficiently related to the right to petition that the statements are absolutely privileged and cannot give rise to liability. The statements had sufficient connection to pending litigation and the *lis pendens* in the pending litigation for the privilege to apply.

---

[124] Restatement (Second) of Torts § 588 (1977) (the judicial privilege extends to witnesses).

**XIV. QUALIFIED PRIVILEGES PROVEN—MOST IMPORTANTLY, THE STATEMENTS MADE AFFECTED THE INTERESTS OF THE PUBLISHER AND COMMON INTERESTS OF THE PARTIES**

"One who publishes defamatory matter concerning another is not liable for the publication if (a) the matter is published upon an occasion that makes it conditionally privileged and (b) the privilege is not abused." Restatement (Second) of Torts § 593 (1977). "An occasion makes a publication **conditionally privileged** if the circumstances induce a correct or reasonable belief that **(a) there is information that affects a sufficiently important interest of the publisher**, and **(b) the recipient's knowledge of the defamatory matter will be of service in the lawful protection of the interest**." *Id.* at § 594 (emphasis added). "(1) An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that (a) there is information that affects a sufficiently important interest of the recipient or a third person, and (b) the recipient is one to whom the publisher is under a legal duty to publish the defamatory matter or is a person to whom its publication is otherwise within the generally accepted standards of decent conduct. (2) In determining whether a publication is within generally accepted standards of decent conduct it is an important factor that (a) the publication is made in response to a request rather than volunteered by the publisher or (b) a family or other relationship exists between the parties." *Id.* at § 595. "**An occasion makes a publication conditionally privileged if the circumstances lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that there is information that another sharing the common interest is entitled to know**." *Id.* at § 596 (emphasis added). "An occasion makes a publication conditionally privileged if an inferior administrative officer of a state or any of its subdivisions who is not entitled to an absolute privilege makes a defamatory communication required or permitted in the performance of his official duties." *Id.* at § 598A. "An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that (a) there is information that affects a sufficiently important public interest, and (b) the public interest requires the communication of the defamatory matter to a public officer or a private citizen who is authorized or privileged to take action if the defamatory matter is true." *Id.* at § 598.

Texas Courts have interpreted qualified privileges for the protection of interests broadly.[125] Where "offending conduct" is "**related to the legitimate interests of the defendant's own operations**" the conduct is privileged.[126]

In this case, the allegedly defamatory statements were made in relation to the legitimate interests of Ghrist, Coker, and the other Defendants, namely those parties' interests in the promissory notes secured by the deeds of trust and in facilitating the sale of Elmer Hernandez's house despite the *lis pendens*, which should not have affected Mr. Hernandez even though Ferguson wrongfully insists that it should have.

In this case, the allegedly defamatory statements were made to Mary Louis Garcia, the Tarrant County Clerk, an administrative officer of a state or its subdivisions for the purpose of informing regarding claims related to a *lis pendens* with effects on the public deed recording system and interests in promissory notes secured by deeds of trust on real estate in Tarrant County, Texas. The statements were made related to the common interest of Ghrist and Ferguson in the promissory

---

[125] *See e.g. Sw. Bell Tel. Co. v. Dixon*, 575 S.W.2d 596, 599 (Tex. Civ. App.—San Antonio 1978) (investigation of reports of employee misconduct privileged, findings of jury to the contrary disregarded because the existence of the privilege is a matter of law for the Court to decide).

[126] *Hous. Oilers v. Harris Cty.*, 960 F. Supp. 1202, 1208 (S.D. Tex. 1997) (emphasis added).

notes secured by the deeds of trusts. The statements were made to protect those important interests in those properties.

Ultimately, Ghrist and Coker both had a legitimate business interest in avoiding liability to Elmer Hernandez for wrongfully refusing to acknowledge satisfaction of the lien on Elmer Hernandez's house. Ghrist and Coker are privileged to protect that interest by acknowledging the lack of encumbrance upon Mr. Hernandez's house when Mr. Hernandez tendered all mortgage payoff funds into the Court's registry.

## XV. THE DEFENDANTS ALSO SHOWED TRUTH OR SUBSTANTIAL TRUTH, LACK OF REQUISITE FAULT, AND FAIR COMMENT AS DEFENSES TO LIBEL OR AS NEGATING THE ELEMENTS OF LIBEL.

Substantial truth negates a defamation or libel claim. A statement that is not verifiable as false cannot be the basis of a defamation or libel claim.[127]

> "The common law and statutes provide certain defenses and privileges to defamation claims. These include the defense of truth, Tex. Civ. Prac. & Rem. Code § 73.005, which **we have interpreted to require defendants to prove the publication was substantially true**, Turner v. KTRK Television, Inc., 38 S.W.3d 103, 115 (Tex. 2000). Moreover, **statements that are not verifiable as false cannot form the basis of a defamation claim**. Milkovich, 497 U.S. at 21-22. Further, the common law has recognized a **judicial proceedings privilege since at least 1772 for parties, witnesses, lawyers**, judges, and jurors. Additionally, one cannot recover mental anguish damages for

---

[127] *Neely v. Wilson*, 418 S.W.3d 52, 62 (Tex. 2013) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21, 110 S. Ct. 2695, 2707 (1990)).

defamation of a deceased individual. Renfro Drug Co. v. Lawson, 138 Tex. 434, 160 S.W.2d 246, 250 (Tex. 1942); see also Restatement (Second) Of Torts § 560 (1977). And **a qualified privilege exists under the common law when a statement is made in good faith and the author, recipient, a third person, or one of their family members has an interest that is sufficiently affected by the statement**. Diamond Shamrock Ref. & Mktg. Co. v. Mendez, 844 S.W.2d 198, 210 (Tex. 1992) (Hightower, J., concurring)." [128]

In this case, the Plaintiff's Response to Defendant's No-Evidence Motion for Summary Judgment attached as Exhibit A to the TCPA Motion demonstrates that the statements were true or substantially true. Specifically, Ghrist had an interest in MBH Real Estate LLC and Ferguson held funds belonging to Ghrist without delivering them. Ferguson did not appropriate the funds to Ghrist as he should have. This is true. Even if Ferguson alleges that it is false, the statement is not "verifiable as false," which means that it cannot support a defamation claim, particularly when the lawsuit that is pending regarding the issue remains pending in another Court. Additionally, Ghrist had a membership interest in MBH Real Estate LLC agreed to in writing by Ferguson.[129]

Ghrist, Coker, and the entities represented by Ghrist in this case clearly had proprietary or other interests that were sufficiently affected by the

---

[128] *Neely v. Wilson*, 418 S.W.3d 52, 62 (Tex. 2013) (emphasis added).
[129] 2 CR 822-23.

statements to be qualifiedly priviledged. Ghrist had an interest in MBH Real Estate LLC, the property owned by MBH Real Estate LLC, and the joint venture between himself and Ferguson, while Coker and the entities had an interest or former interests in the same subject matter. The statements made were made for the purpose of facilitating the sale of the Purselley property and protecting the interests protected by the pending *lis pendens*. Those are good faith reasons for the statements and no evidence of malice exists. The statements were privileged because they were made in connection with those interests affected by the statements.

Fault Requirement. "One who publishes a false and defamatory communication concerning a private person, or concerning a public official or public figure in relation to a purely private matter not affecting his conduct, fitness or role in his public capacity, is subject to liability, if, but only if, he (a) knows that the statement is false and that it defames the other, (b) acts in reckless disregard of these matters, or (c) acts negligently in failing to ascertain them."[130]

In this case, the Plaintiff utterly failed to show any requisite fault on the part of any of the Defendants. The statements made were true, the Defendants knew the statements to be true, the Defendants did not act with reckless disregard or

---

[130] Restatement (Second) of Torts § 580B (1977).

negligence. Specifically, Ghrist hired Brandon Lim, a professional accountant to evaluate whether Ferguson had not appropriated funds correctly. The accountant determined that Ferguson did not appropriate the funds correctly and withheld funds from Ghrist wrongfully.[131] Accordingly, Ghrist performed due diligence in ascertainment of the truth of the claims. Additionally, the statements were true as shown by the evidence, particularly the evidence in the No-Evidence Summary Judgment Response attached as Exhibit A to the TCPA Motion.

Fair comment. a broadcast is privileged if it is a "reasonable and fair comment on or criticism of an official act of a public official or other matter of public concern published for general information."[132] In this case, the statements made were reasonable and fair comments published for general information about the public deed recording system and claims that could affect interests under that system.

---

[131] 1 CR 222-304.
[132] Tex. Civ. Prac. & Rem.Code § 73.002(b)(2). *Neely v. Wilson*, 418 S.W.3d 52, 70 (Tex. 2013).

**XVI.** **THE TRIAL COURT ERRED BY SUSTAINING OBJECTIONS OR SPECIAL EXCEPTIONS TO THE MOTION ON THE GROUNDS THAT THE MOTION DID NOT SPECIFY WHICH CAUSES OF ACTION THE MOTION WAS FILED ON BECAUSE THE CAUSES OF ACTION DO NOT NEED TO ARISE FROM THE TCPA STATEMENTS, BUT RATHER ONLY NEED TO BE EITHER "BASED ON, RELATED TO, OR IN RESPONSE TO" THE TCPA STATEMENTS**

In *ExxonMobile Pipelinne Co. v. Coleman*, the Texas Supreme Court went so far as to apply the TCPA to internal emails about a "private employment matter" because the statements related to a pipeline that could have caused environmental damage, which made the statements a matter of public concern, despite their private, internal, and employment-related nature.[133]

The error made by Ferguson and the trial court was in assuming that TCPA Statements must constitute the basis for the causes of action that a TCPA motion is filed on. Statements made pursuant to the TCPA only need to have some connection to the various causes of action, which can include far more than just defamation or libel.[134] Breach of contract, conversion, breach of fiduciary duty,

---

[133] *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 900 (Tex. 2017).

[134] *Rehak Creative Servs. v. Witt*, 404 S.W.3d 716, 733 (Tex. App.—Houston [14th Dist.] 2013) (movant's burden on TCPA motion satisfied as to conversion, civil conspiracy, and misappropriation claims); *Elite Auto Body LLC v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191, 194 (Tex. App.—Austin 2017) (TCPA applied to trade-secret misappropriation, violation of Texas Uniform Trade Secrets Act, unfair competition, breach of fiduciary duty, and civil conspiracy).

statutory causes of action—all of these can be the basis of a TCPA motion and the movant's only burden is to show that TCPA Statements were made that have some connection to the causes of action.

### a. THE TRIAL COURT'S OPINION THAT TCPA MOTIONS ARE LIMITED TO LIBEL OR DEFAMATION IS INCORRECT AS A MATTER OF LAW AND CLEARLY DID NOT RENDER THE MOTION FRIVILOUS

Ferguson alleged, and the trial judge apparently agreed, that the TCPA motion was frivilous because the motion failed to state that it was filed solely on the libel claims.[135] The TCPA has, however, been broadly applied to far more than mere defamation and libel.

The TCPA has been applied to conversion, civil conspiracy, misappropriation, breach of contract, and many other causes of action.[136] The TCPA inquiry "does not focus on whether . . . conversion and misappropriation claims arise from the assertedly libelous nature of the . . . statements" because "[t]he statute broadly

---

[135] 1 RR 16, 27.

[136] *Rehak*, 404 S.W.3d at 733 (Tex. App.—Houston [14th Dist.] 2013) (movant's burden on TCPA motion satisfied as to conversion, civil conspiracy, and misappropriation claims); *Elite Auto Body LLC*, 520 S.W.3d at 194 (Tex. App.—Austin 2017) (TCPA applied to trade-secret misappropriation, violation of Texas Uniform Trade Secrets Act, unfair competition, breach of fiduciary duty, and civil conspiracy).

encompasses a 'cause of action' that 'relates to' free speech."[137] Accordingly, the movant's burden is not to show that (1) the TCPA Statements gave rise to the causes of action, or (2) the statements were made in exercise of protected speech.[138] Instead, the movant's burden is merely to show that statements were made or actions taken that have some connection to free speech, the right of association, or the right to petition and that those statements or actions have some relationship to the causes of action alleged.

## XVII. THE TRIAL COURT'S OPINION THAT TCPA MOTIONS ARE LIMITED TO LIBEL OR DEFAMATION IS INCORRECT AS A MATTER OF LAW AND CLEARLY DID NOT RENDER THE MOTION FRIVOLOUS

When Ghrist prevails in the 17th District Court on his claims to a joint venture in MBH Real Estate LLC, then there can no longer be any dispute regarding whether the lien releases or other statements in connection with the closing of the sale of Elmer Hernandez's house were wrongful. The motion was clearly not frivolous as there were statements made that had a connection to the right to petition, the right of association, and free speech.

---

[137] *Id.* (finding "no difficulty" in concluding that the movant's TCPA burden was established where the conversion and misappropriation causes of action "**have a connection**" with a communication related to free speech) (emphasis added).

[138] *Elite Auto Body*, 520 S.W.3d at 204-05 (pointing out that whether the speech was constitutionally protected or not was not relevant to the movant's initial burden, but rather only relevant to the "second part" of the analysis, in which the nonmovant must establish the claim)

**XVIII. THE PLAINTIFFS' CAUSES OF ACTION CLEARLY DID NOT FALL UNDER ANY TCPA STATUTORY EXEMPTIONS, MOST SPECIFICALLY, THE ACTIONS COULD NOT FALL UNDER THE COMMERCIAL SPEECH EXEMPTION BECAUSE GHRIST DID NOT MAKE THE STATEMENTS FOR THE PURPOSE OF SELLING GOODS OR SERVICES TO FERGUSON OR HIS COMPANIES, THE PLAINTIFFS.**

Under Tex. Civ. Prac. & Rem. Code § 27.010(b), the TCPA exempts from coverage

> "a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer."[139]

The burden of proving the applicability of this exemption, known as the "commercial speech exemption," is on the party asserting it.[140] This exemption can apply only where a statement was made for the purpose of securing sales of the goods or services of the person making the statement.[141] For example, where statements could have been read by potential customers of a newspaper, but the

---

[139] Tex. Civ. Prac. & Rem. Code § 27.010(b)
[140] *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 89 (Tex. App.—Houston [1st Dist.] 2013).
[141] *Id.* at 88

statements were not directed to the customers for the purpose of selling newspapers, the exemption was inapplicable.[142]

In this case, Ghrist and Coker were not selling anything to anybody, especially the Plaintiffs, and Sendera Title was selling a title insurance policy to the buyer of Elmer Hernandez's house, not to the Plaintiffs or the Defendants. Ghrist and Coker *et. al.* made no statements to the Plaintiffs for the purpose of selling the Plaintiffs any goods or services, and in fact, Ghrist and Coker *et. al.* would never want the Plaintiffs as customers after the Plaintiffs defrauded them. The Plaintiffs allege that Ghrist and Coker *et. al.* sell goods and services in general, but wholly failed to demonstrate that Ghrist and Coker *et. al.* were marketing goods or services to the Plaintiffs in connection with the sale of the Purselley Property.

Where statements are made about a dispute between the parties rather than for the purpose of selling goods or services to the Plaintiffs, then the commercial speech exemption does not apply.[143] In this case, the emails with Sendera Title, the allegedly wrongful releases, and all other statements were not made for the purpose

---

[142] *Id.*

[143] *Moldovan v. Polito*, No. 05-15-01052-CV, 2016 Tex. App. LEXIS 8283, at *12 (App.—Dallas Aug. 2, 2016).

of selling goods or services to the Plaintiffs, but rather to effectuate the sale of

Elmer Hernandez's house. Elmer Hernandez is not a plaintiff herein.

**XIX.  WHEN THE TRIAL COURT'S ORDER READ THAT "PLAINTIFFS OBJECTIONS TO DEFENDANTS MOTION TO DISMISS ARE SUSTAINED," THAT LANGUAGE WAS NOT INTENDED TO SUSTAIN EACH OF PLAINTIFFS' EXTREMELY VOLUMINOUS EVIDENTIARY OBJECTIONS FILED ON THE DAY OF THE HEARING, NOT DISCUSSED AT THE HEARING, AND THAT DEFENDANT HAD NO OPPORTUNITY TO REVIEW PRIOR TO THE HEARING OR RESPOND TO**

The party who fails to obtain a written ruling on each objection waives

objection.[144] The Fort Worth Court of Appeals has agreed that a written ruling on

each objection is required or strongly preferred.[145] An order on a motion does not

constitute an implicit ruling that either sustains or overrules objections to the

evidence.[146] Objections to form of evidence are preserved for appellate review only

---

[144] *Id.*

[145] *Opperman v. Opperman*, No. 07-12-00033-CV, 2013 Tex. App. LEXIS 14867, at *7 (App.—Amarillo Dec. 9, 2013) (We agree with [the Fort Worth Court of Appeals] that the better practice would be for the trial court to disclose, in writing, its ruling on all summary judgment evidence before the time it enters an order granting or denying summary judgment.); *Law Office of David E. Williams, II, P.C. v. Fort Worth Tex. Magazine Venture, LP*, No. 02-10-00373-CV, 2011 Tex. App. LEXIS 5157, at *7 (Tex. App.—Fort Worth July 7, 2011, no pet.) (mem. op.).

[146] *Anderson v. Limestone Cty.*, No. 10-07-00174-CV, 2008 Tex. App. LEXIS 5041, at *4-5 (App.—Waco July 2, 2008) (citing *Allen v. Albin*, 97 S.W.3d 655, 663 (Tex. App.--Waco 2002, no pet.)).

if those objections are made and ruled on in the trial court.[147] The trial court should disclose, in writing, its rulings on each evidentiary objection.[148]

In this case, the Plaintiffs failed to obtain a written ruling on each objection. The Plaintiffs filed myriad evidentiary objections on the morning of the hearing, did not discuss any evidentiary objections at the hearing,[149] and submitted a proposed order that the trial judge ultimately signed that merely sustained objections, but did not refer to whether the objections to the motion that were raised at the hearing were being sustained,[150] or rather, all of the voluminous evidentiary objections that were not presented at the hearing and that the judge could not have had time to review prior to the hearing.

The hearing on the TCPA motion to dismiss was held on November 13th, 2017 starting at 11:40 am.[151] The hearing had been set for 11:00 am, but Judge Lowe did not arrive until 11:40 am due to dealing with a personal matter. The Plaintiffs' responses to the motion, being objections, special exceptions, and two separate

---

[147] *Id.*
[148] *Allen v. Albin*, 97 S.W.3d 655, 663 (Tex. App.—Waco 2002).
[149] 1 RR passim.
[150] 1 RR 16 (the only objection discussed at the hearing was the objection to the motion to dismiss having been filed as to more than just the libel claim).
[151] 1 RR 1, 4.

response documents, were filed on the morning of the hearing.[152] As those documents were filed on the morning of the hearing, Mr. Ghrist, counsel for the Defendants, had no time or opportunity to review the documents prior to the hearing. Even the trial judge could not have possibly had time to review the response to the motion because it was filed the morning of the hearing while the judge was dealing with a personal matter.

The documents filed on the day of the hearing contained lengthy, and mostly frivolous, objections to the Defendants' evidence attached to the motion to dismiss.[153] None of these objections were discussed at the hearing except that Ferguson told the trial judge that he had objected to the motion as being frivolous because it was filed on more than just the libel claim.[154] The trial judge apparently agreed by signing the order prepared and submitted by Ferguson on the day after the hearing,[155] but as explained above,[156] the TCPA clearly has coverage far more broad than mere defamation and libel, so a finding that the motion was frivolous

---

[152] 2 CR 455 (Plaintiffs Objections to the Motion); 2 CR 484 (Plaintiffs' Special Exceptions); 2 CR 502 (Plaintiffs' Response to Additional Briefing); 2 CR 520 (Plaintiffs' Response to the TCPA Motion).
[153] 2 CR 455-83.
[154] 1 RR 16, 27.
[155] 2 CR 858.
[156] Section XVI of this brief.

because it was not limited to the libel claim was wholly unwarranted by the facts or law.

Under the foregoing circumstances, the part of the order stating that "Plaintiffs' Objections to Defendants' Motion to Dismiss are sustained" should not be interpreted as sustaining each and every one of Plaintiffs' extremely voluminous evidentiary objections that neither the Court or Defendants' counsel could have possibly reviewed before or at the hearing due to the late nature of the filing.

In response to the evidentiary objections, the Defendants have submitted responses to each objection under Appendix 3 to this brief. Defendants would ask that all evidentiary objections to Defendants' evidence be denied. If the trial court's order could be construed as a blanket sustaining of all of Plaintiffs' evidentiary objections, then the trial court erred on every evidentiary objection because each and every evidentiary objection raised by the Plaintiffs were groundless.[157]

---

[157] Appx. 3.

**XX. EVEN IF ANY OF PLAINTIFFS' EVIDENTIARY OBJECTIONS HAD A BASIS, DEFENDANTS' SHOULD HAVE BEEN GIVEN AN OPPORTUNITY TO CURE DEFECTS, PARTICULARLY WHEN THE OBJECTIONS WERE FILED ON THE DAY OF THE HEARING, WERE NOT DISCUSSED AT THE HEARING, AND DEFENDANTS HAD NO OPPORTUNITY TO REVIEW THE OBJECTIONS PRIOR TO THE HEARING DUE TO THEIR TARDY FILING**

Where a trial court finds evidentiary deficiencies in pre-trial motions, the party offering the evidence should be given an opportunity to cure if it is possible to do so.[158] The trial court should be lenient in granting opportunities to cure so that the party has a fair opportunity to demonstrate that a claim is not frivolous.[159] Affording the opportunity to cure evidentiary defects is particularly important where the defect is to form rather than substance.[160] The movant should be allowed to amend to cure technical defects.[161] The motion should not be denied until the party has an opportunity to cure evidentiary objections by amendment and refuses.[162]

---

[158] *Gower v. Univ. Behavioral Health of Denton*, No. 02-16-00245-CV, 2017 Tex. App. LEXIS 6746, at *25 (App.—Fort Worth July 20, 2017).
[159] *Id.*
[160] Tex. R. Civ. P. 166a; 7-101 Dorsaneo, Texas Litigation Guide § 101.05 (2017).
[161] *Shaw v. Norwest Bank Tex.*, N.A., NUMBER 13-99-602-CV, 2001 Tex. App. LEXIS 4177, at *16-17 (App.—Corpus Christi June 21, 2001).
[162] *Choctaw Props., L.L.C. v. Aledo I.S.D.*, 127 S.W.3d 235, 241 (Tex. App.—Waco 2003).

In this case, the evidentiary objections were filed on the morning of the hearing and were not discussed at the hearing. Moreover, the Plaintiffs submitted certified public records to show that Mr. Ferguson conveyed the Subject Property from MBH Real Estate LLC to Elmer Hernandez, but omitted the foreclosure sale deed signed by Ferguson wherein Ferguson conveyed the Subject Property to Metro Buys Homes LLC, not to MBH Real Estate LLC, which caused the very title issues of which Plaintiffs complain.

The Defendants should have had an opportunity to amend and cure any evidentiary defects if the trial court's order can even be construed as sustaining the Plaintiffs' evidentiary objections. The Defendants should also be able to show Instrument No. D215075534 in the Tarrant County, Texas deed records, Appx. 2 herein, which is an essential component of the chain-of-title that Ferguson misleadingly omitted from his documents submitted the morning of the TCPA hearing. Regardless, Ferguson had the burden of showing enough of the chain-of-title to establish his claim, and so, he failed to carry that burden by offering any evidence that MBH Real Estate LLC was ever in the chain-of-title to the Subject Property.

This is true regardless of whether this Court considers Instrument No. D215075534 in the Tarrant County, Texas deed records, being the foreclosure sale

deed from Ferguson to Metro Buys Homes LLC because the turnover order[163] showing Coker *et. al.* to be in the chain-of-title, before any conveyance involving MBH Real Estate LLC, is in the record. Mr. Ferguson's burden is not met regardless, but is particularly not met when the turnover order is in this Court's record.[164]

## XXI. PRAYER

The Defendants ask this Court to reverse the trial court's order and render judgment dismissing Plaintiffs' suit with prejudice, awarding attorney's fees,[165] costs, and sanctions to Ghrist's clients. In the alternative, Defendants ask that this Court reverse the trial court's order and render judgment dismissing Plaintiffs' claims against Defendants with prejudice, awarding attorney's fees,[166] costs, and sanctions to the Defendants, and leaving Plaintiffs' claims against Sendera Title[167] and its employees unaffected. In the further alternative, the Defendants ask this Court to dismiss each cause of action that this Court finds should be dismissed, award attorney's fees,[168] costs, and sanctions to appellants, and affirm the trial

---

[163] 1 CR 133-34.
[164] *Id.*
[165] 1 CR 368-70.
[166] 1 CR 368-70.
[167] 1 RR 29-30 (the Sendera defendants appeared at the hearing by counsel and orally joined in the motion to dismiss).
[168] 1 CR 368-70.

court's order as to the remaining claims. The trial court should have considered a partial grant of the TCPA motion instead of finding that the motion was frivolous for failure to limit the motion to the libel claim.[169] If the motion is partially granted, then attorney's fees and sanctions should be awarded on the claims that the motion is partially granted on.[170]

Defendants ask this Court to overrule Plaintiffs' evidentiary objections. Defendants ask this Court to find that the trial court's order sustaining objections to the motion itself did not also sustain the Plaintiffs' voluminous evidentiary objections filed the morning of the hearing and not discussed at the hearing.

In the further alternative, Defendants ask that this Court issue an opinion and reverse and remand for further proceedings pursuant to such opinion as necessary.

Regardless of what other actions this Court takes, the Defendants ask that this Court find that the motion filed under the TCPA was not frivolous or solely intended to delay and deny any recovery of attorney's fees to the Plaintiffs' for

---

[169] *Schlumberger Ltd. v. Rutherford*, 472 S.W.3d 881, 890 (Tex. App.—Houston [1st Dist.] 2015) (partial grant of TCPA motion as to some claims but not others proper); *D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429 (Tex. 2017) (granting TCPA motion as to statutory claims, like DTPA, but denying it as to defamation was proper).

[170] *D Magazine*, 529 S.W.3d at *30 (attorney's fees must be awarded to the movant when TCPA motion is partially granted as to some claims but not others)*; Sullivan v. Abraham*, 472 S.W.3d 677, 683 (Tex. App.—Amarillo 2014), *rev'd on other grounds*, 488 S.W.3d 294 (Tex. 2016) (award of some sanctions are mandatory even if movant fails to adequately support claim for attorney's fees).

defense of the motion. In the alternative, Defendants ask for a hearing on the attorney's fees because the fee request was filed on the morning of the hearing on the TCPA motion and Defendants had no opportunity to review or challenge the amount of fee request before the hearing began.

With regard to attorney's fees and sanctions requested by Defendants, the Defendants request $6,550.00 in attorney's fees on the TCPA motion, $5,000.00 for the appeal, and three times the foregoing as sanctions.[171] In the further alternative, Defendants ask the Court to remand to the trial court for further proceedings in connection with this Court's opinion to be rendered.

---

[171] 1 CR 369-70.

Respectfully submitted,

_____/s/ Ian Ghrist_____

Ian Ghrist
State Bar No. 24073449
ian@ghristlaw.com

Ghrist Law Firm
2735 Villa Creek Drive, Suite 250A
Farmers Branch, Texas
Telephone: (817) 778-4136
Fax:        (817) 900-2863

ATTORNEY FOR APPELLANTS

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rules of Appellate Procedure 9.4, I hereby certify that, absent the caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendices, the computer program used to prepare this document prior to its conversion to portable document format calculates the number of words in the foregoing brief as 14,085. I further certify that this brief complies with the typeface requirements of Texas Rule of Civil Procedure 9.4(e) because this brief has been prepared in a proportionately spaced typeface using "Microsoft Word" in fourteen (14) point "Times New Roman" style font.

_____/s/ Ian Ghrist_____
Ian Ghrist


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on the following via electronic service upon this the __13th___ day of ___December_____, 2017 to the following counsel of record via electronic filing.

J. Michael Ferguson
62 Main St., Suite 310
Colleyville, Texas 76034
Tel. (817) 267-1008
Fax (817) 485-1117
mike@jmichaelferguson.com
Attorney for Plaintiffs

Salvador Espino
1205 N Main St.
Fort Worth, Texas 76164
Phone (817) 624-3352
Fax (817) 624-6104
sal_fw@yahoo.com
Attorney for Sendera Title and employees

____/s/ Ian Ghrist_____
Ian Ghrist

## SECOND COURT OF APPEALS

## FORT WORTH, TEXAS

GHRIST LAW FIRM ET. AL.,
                            Appellants
                V.

J. MICHAEL FERGUSON PC, ET. AL.
                            Appellees

FROM THE 236TH DISTRICT COURT
TARRANT COUNTY, TEXAS
CAUSE NO. 236-295012-17

## INDEX TO APPENDIX TO BRIEF OF APPELLANTS

1. Order Appealed From

2. Instrument No. D215075534 in the Tarrant County, Texas Deed Records, being the foreclosure sale deed from J. Michael Ferguson as grantor to Metro Buys Homes LLC as grantee

3. Evidentiary Objection Responses

# Appx. 1

| | | |
|---|---|---|
| MBH REAL ESTATE, LLC, <br> AFI LOAN SERVICING, LLC. <br> ANSON FINANCIAL, INC. <br> J. MICHAEL FERGUSON. P.C. <br><br> *Plaintiffs* <br><br> v. <br><br> IAN GHRIST, GHRIST LAW FIRM, PLLC, SHAWN COKER, NEIGHBORHOOD PARTNER, INC., BLUE MOON REALTY GROUP, LLC AND WIZARD FUNDING. LLC, SILVER STAR TITLE, LLC DBA SENDERA TITLE, ELIZABETH ESPINO. KATHY E. MONTES, and LUCY OLIVAS <br><br> *Defendants* | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | IN THE DISTRICT COURT <br><br><br> 236TH DISTRICT COURT <br><br><br><br><br><br><br><br><br> TARRANT COUNTY, TEXAS |

## ORDER DENYING GHRIST DEFENDANTS AND COKER DEFENDANTS MOTION TO DISMISS PURSUANT TO CHAPTER 27 & ORDER SUSTAINING PLAINTIFFS' OBJECTIONS TO DEFENDANTS' MOTION TO DISMISS

CAME ON THIS DAY TO BE HEARD, Defendants IAN GHRIST. GHRIST LAW FIRM. PLLC, SHAWN COKER. NEIGHBORHOOD PARTNER, INC., BLUE MOON REALTY GROUP, LLC, WIZARD FUNDING, LLCs' Motion to Dismiss Pursuant to Chapter 27 of the Texas Civil Practice and Remedies Code. This Court, after considering the pleadings, the response, the objections to Defendants' Motion to Dismiss, the competent evidence, the documents. the arguments of counsel and the applicable law is of the opinion that Plaintiffs' objections to Defendants' Motion to Dismiss should be sustained and that Defendants' Motion to Dismiss should be denied.



856

It is therefore ORDERED that Plaintiffs' Objections to Defendants' Motion to Dismiss are sustained.

It is further ORDERED that Defendants IAN GHRIST, GHRIST LAW FIRM, PLLC, SHAWN COKER, NEIGHBORHOOD PARTNER, INC., BLUE MOON REALTY GROUP, LLC, WIZARD FUNDING, LLCs' Motion to Dismiss Pursuant to Chapter 27 of the Texas Civil Practice and Remedies Code is denied.

This Court finds:

1. THE GHRIST DEFENDANTS and THE COKER DEFENDANTS have no standing to assert a SLAPP Motion on behalf of Sendera Title and its employees.

2. Portions of Defendants' Motion to Dismiss were based upon claims which have not been brought against the Defendants, and are therefore denied;

3. A Motion to Dismiss pursuant to Chapter 27 does not apply to Declaratory Judgment Actions to determine the rights, status, or other legal relations in relation to the property or to determine the validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder as expressly authorized by Chapter 37 of the **Tex.Civ.Prac.Rem.Code**;

4. Defendants have not met their initial burden of proof to show that the action is based on, relates to, or is in response to a party's exercise of the right of free speech, the right of petition, or the right of association;

5. Even if Defendants could show that the actions brought by Plaintiffs are based on, relates to, or is in response to a party's exercise of the right of free speech, the right of petition, or the right of association, the actions are exempt from Chapter 27;

6.    Further, even if Defendants could show that the actions brought by Plaintiffs based on, relates to, or is in response to a party's exercise of the right of free speech, the right of petition, or the right of association, Plaintiffs have produced clear and specific evidence which establishes a prima facie case for each essential element of Plaintiffs' claims such that the Defendants' Motion must be dismissed; and

7.    Defendants cannot establish a valid defense to Plaintiffs' claims; and

8.    Defendants' motion to dismiss filed under this chapter is frivolous or solely intended to delay.

By separate Order, the Court has ordered the parties to mediate this case.

This Court is withholding its ruling on Plaintiffs' requests for an award of court costs and reasonable attorney's fees for responding to the Motion to Dismiss to give the parties time to mediate this case. ~~In the event that the parties do not resolve their disputes at mediation, this Court will issue an Order on its ruling on Plaintiffs' requests for costs and reasonable attorney's fees by December 15, 2017.~~

It is further ORDERED that the automatic abatement of discovery pursuant to 27.003 of Tex.Civ.Prac.Rem. Code is removed.

It is further ORDERED that the parties shall confer and submit an agreed scheduling order to this court within the next 3̶0̶ days.

Signed on this the 14 day of November 2017.

_____
JUDGE PRESIDING

A True and Correct Copy of Original Record Filed in Tarrant County, TEXAS
*Verify Certification at* https://tcrecordsonline.com
*Verify Key:* y8ru6dh2

**Tarrant County Clerk**

*Mary Louise Garcia*

D215075534   4/14/2015 2:53 PM   PGS 7      Fee: $40.00      Submitter: SIMPLIFILE
Electronically Recorded by Tarrant County Clerk in Official Public Records *Mary Louise Garcia* **Mary Louise Garcia**

**NOTICE OF CONFIDENTIALITY RIGHTS:  IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:  YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

<u>**FORECLOSURE SALE DEED**</u>
<u>**WITH ATTACHED AFFIDAVIT**</u>       <u>**Appx. 2**</u>

**Date**:  April 10, 2015

**Deed of Trust**

| | |
|---|---|
| **Date:** | May 7, 2009 |
| **Grantor:** | Jesse D. Chenoweth and Valerie Grace Tejeda Chenoweth |
| **Beneficiary:** | Metro Buys Homes, LLC |
| **Trustee:** | David C. Boles |
| **Recorded in:** | Index Number D209238737 of the Real Property Records of Tarrant County, Texas. |
| **Property:** | Lot 23, Block 1, W.B. Moncrief Addition in the City of Fort Worth, Tarrant County, Texas, according to the plat recorded in Volume 388-F, Page 471, Deed Records of Tarrant County, Texas. (More commonly known as: 2420 Purselley, Fort Worth, Texas 76112) |

**Note Secured by Deed of Trust**

| | |
|---|---|
| **Date:** | May 7, 2009 |
| **Original Principal Amount:** | $51,000.00 |
| **Holder:** | Metro Buys Homes, LLC |
| **Date of Sale of Property:** | April 7, 2015 |
| **Place of Sale of Property:** | East Steps of Courthouse or the place designated by the County Commissioner's Court, Tarrant County, Texas. |
| **Time of Sale:** | 12:38:00 PM |

A True and Correct Copy of Original Record Filed in Tarrant County, TEXAS
*Verify Certification at* https://tcrecordsonline.com
*Verify Key:* y8ru6dh2



**Tarrant County Clerk**



| | |
|---|---|
| **Buyer:** | Metro Buys Homes, LLC |
| **Buyer's Mailing Address:** | 1210 Hall Johnson Rd., Suite 100<br>Colleyville, Texas 76034 |
| **Amount of Sale:** | $51,000.00 |

By Deed of Trust, Grantor conveyed to David C. Boles as Trustee, certain property for the purpose of securing and enforcing payment of the indebtedness and obligations therein described (collectively the Obligations), including but not limited to (1) a note described in the Deed of Trust, (2) all renewals and extensions of the note, and (3) any and all present and future indebtedness of Grantor(s) to Beneficiary.

Beneficiary, the holder of the Obligations and Deed of Trust, requested J. Michael Ferguson as (Substitute) Trustee, to enforce the trust of the Deed of Trust. Default has occurred in the payment of the Obligations when due. The unpaid balance of the principal of the Obligations was accelerated, and default has occurred and is continuing in the payment of the Obligations.

Pursuant to the requirements of the Deed of Trust and the laws of the State of Texas, written notice of the time, place, date, and terms of the public foreclosure sale of the Property was posted at the courthouse door of Tarrant County, Texas, the county in which the Property is situated, and a copy of the notice was also filed with the county clerk of Tarrant County, Texas, each notice having been posted and filed for at least twenty-one days preceding the date of the foreclosure sale.

Additionally, written notice of the time, date, place, and terms of the foreclosure sale was served on behalf of Beneficiary by certified mail on each debtor who, according to the records of Beneficiary, is obligated to pay any of the Obligations. The certified mailed notices were timely sent by depositing such notices in the United States mail, postage prepaid in proper amount, and addressed to each debtor at the debtor's last known address as shown by the records of Beneficiary, at least twenty-one days preceding the date of the foreclosure.

Written notice of default and of the opportunity to cure the default to avoid acceleration of the maturity of the note was served on behalf of Beneficiary by certified mail on each debtor who, according to the records of Beneficiary, is obligated to pay any of the Obligations. The certified mail notices were timely sent by depositing such notices in the United States mail, postage prepaid in proper amount, and addressed to each debtor at the debtor's last known address as shown by the records of Beneficiary at least twenty-one days preceding the date of the acceleration of the maturity of the note and the posting of the mortgaged Property for foreclosure.

Attached hereto are affidavits for the mailing of notice of intent to accelerate the maturity of the note to debtors, and posting and mailing of notice of foreclosure sale and conduct of the foreclosure sale and for the mailing of notice to the Internal Revenue Service if applicable.



A True and Correct Copy of Original Record Filed in Tarrant County, TEXAS

*Verify Certification at* https://tcrecordsonline.com

*Verify Key: y8ru6dh2*

**Tarrant County Clerk**

*Mary Louise Garcia*

In consideration of the premises and of the bid and payment by way of credit against the unpaid balance owed on the Obligations, of the sum of $51,000.00 the highest bid by Buyer, Metro Buys Homes, LLC. I, J. Michael Ferguson as (Substitute) Trustee, by virtue of the authority conferred on me in the Deed of Trust, have **GRANTED, SOLD, and CONVEYED** and by these presents do **GRANT, SELL, and CONVEY** to Buyer, Buyer's heirs and assigns, all of the Property.

**TO HAVE AND TO HOLD** the Property, together with the rights, privileges, and appurtenances thereto belonging unto Buyer, Buyer's heirs and assigns, forever; and I, J. Michael Ferguson, as the (Substitute) Trustee, do hereby bind Grantor, Grantor's heirs and assigns, to **WARRANT AND FOREVER DEFEND** the Property to Buyer, Buyer's heirs and assigns, forever, against the claim or claims of all persons claiming or to claim the same or any part thereof.

**EXECUTED ON April 10, 2015 but effective date is** April 7, 2015

_____

**J. Michael Ferguson, Substitute Trustee**

**ACKNOWLEDGMENT**

**STATE OF TEXAS** §
**COUNTY OF TARRANT** §

This instrument was acknowledged before me on April 10, 2015 by J. Michael Ferguson, Substitute Trustee.

JESSICA DORSETT
MY COMMISSION EXPIRES
APRIL 15, 2019

_____
Notary Public, State of Texas

A True and Correct Copy of Original Record Filed in Tarrant County, TEXAS
*Verify Certification at* https://tcrecordsonline.com
*Verify Key: y8ru6dh2*


## Foreclosure Affidavit

Date:         Effective April 7, 2015

Affiant:     J. Michael Ferguson

Affiant on oath swears that the following statements are true and are within the personal knowledge of Affiant:

1.      This Affidavit is made with respect to the foreclosure of the Deed of Trust that occurred on April 7, 2015.

2.      Affiant, either personally or by agent, posted a copy of the Notice of Foreclosure Sale on March 17, 2015 at the place at the Courthouse designated in the notice, being the area designated by the County Commissioner's Court for Foreclosure Sales and I, either personally or by agent, filed the Notice of Foreclosure Sale in the Office of the County Clerk for the County in which the property is located.  Attached to this Affidavit is a copy of the Notice of Foreclosure Sale, file-stamped by the County Clerk's Office.

3.      The Trustee's Sale took place on April 7, 2015 at approximately 12:38:00 PM at the County Courthouse in the place designated in the Notice of Foreclosure Sale, being the area designated by the County Commissioner's Court for Foreclosure Sales.

4.      Affiant, either personally or by agent gave written notice by regular and certified mail stating the debtor(s) was in default under the Deed of Trust and the notice gave the debtor(s) at least 20 days to cure the default before notice of the sale was given as required by §51.002(d) of the Texas Property Code.

5.      At least twenty-one days before the Foreclosure Sale, Affiant gave notice of the sale to every debtor of Holder's record as follows: Jesse D. Chenoweth and Valerie Grace Tejeda Chenoweth, 1602 Briarpath Lane, Arlington, Texas 76018.  Each notice was mailed on March 13, 2015 by regular and certified mail, properly addressed to each debtor listed above.

6.      To the best of Affiant's knowledge, the Grantor(s) were alive on the date of the Foreclosure Sale and were not in the military service within the ninety days before the Foreclosure Sale.

_____
J. Michael Ferguson

A True and Correct Copy of Original Record Filed in Tarrant County, TEXAS
*Verify Certification at* https://tcrecordsonline.com
*Verify Key: y8ru6dh2*

**Tarrant County Clerk**



STATE OF TEXAS        §
COUNTY OF TARRANT   §

This instrument was acknowledged before me on April 10, 2015 by J. Michael Ferguson.



JESSICA DORSETT
MY COMMISSION EXPIRES
APRIL 15, 2019

Notary Public, State of Texas

After Recording, Return to:

J. Michael Ferguson, P.C.
1210 Hall Johnson Rd., Suite 100
Colleyville, Texas 76034

Foreclosure Sale Deed - Page 5 of 5



A True and Correct Copy of Original Record Filed in Tarrant County, TEXAS

*Verify Certification at* https://tcrecordsonline.com

*Verify Key: y8ru6dh2*

**Tarrant County Clerk**

*Mary Louise Garcia*

# Notice of Foreclosure Sale

| | |
|---|---|
| **Date:** | March 13, 2015 |
| **Type of Security Instrument:** | Deed of Trust |
| Date of Instrument: | May 7, 2009 |
| Grantor(s): | Jesse D. Chenoweth and Valerie Grace Tejeda Chenoweth |
| Trustee: | David C. Boles |
| Beneficiary: | Metro Buys Homes, LLC |
| **County of Property:** | Tarrant |
| **Recording Information:** | Deed of Trust is recorded in Index No.D209238737 of the Real Property Records of Tarrant County, Texas. |
| Property Description: | Lot 23, Block 1, W.B. Moncrief Addition in the City of Fort Worth, Tarrant County, Texas, according to the plat recorded in Volume 388-F, Page 471, Deed Records of Tarrant County, Texas. *(More Commonly Known as 2420 Purselley, Fort Worth, Texas 76112)* |
| **Note:** | |
| Date of Note: | May 7, 2009 |
| Amount: | $51,000.00 |
| Debtor(s): | Jesse D. Chenoweth and Valerie Grace Tejeda Chenoweth |
| Holder: | Metro Buys Homes, LLC |
| **Date of Sale of Property:** | April 7, 2015 |
| **Earliest Time of Sale of Property:** | The sale shall begin no earlier than 10:00:00 AM and no later than three hours thereafter. The sale shall be completed by no later than 4:00 P.M. |
| **Place of Sale of Property:** | East Steps of Courthouse or place designated by the County Commissioners Court |

Because of default in the performance of the obligations of the Deed of Trust, the (Substitute) Trustee will sell the property by public auction to the highest bidder for cash at the place and date specified to satisfy the debt secured by the Deed of Trust. The sale will begin at the earliest time stated above and within three hours after that time.

_____

J. Michael Ferguson, Trustee
1210 Hall Johnson Road, Suite 100
Colleyville, Texas 76034
   (817) 267-1008 Phone
   (817) 485-1117 Fax
   Email: mike@jmichaelferguson.com

A True and Correct Copy of Original Record Filed in Tarrant County, TEXAS
*Verify Certification at* https://tcrecordsonline.com
*Verify Key: y8ru6dh2*

**Tarrant County Clerk**



**MARY LOUISE GARCIA**
**COUNTY CLERK, TARRANT COUNTY**
**100 W. WEATHERFORD**
**FORT WORTH, TX 76196-0401**

| | | |
|---|---|---|
| Receipt Time: | 03/17/2015 02:41:13 PM | |
| Issued To: | J. MICHAEL FERGUSON, P.C. | Receipt #: 2803032 |

## Documents

| # | Type | # Pages | Quantity | Reference # | Book / Page | Amount |
|---|---|---|---|---|---|---|
| 1 | Fcnotice | 1 | 8 | NA | | $104.00 |
| | | | | | Total : | $104.00 |

## Payments

| # | Type | Payment # | | Amount | NSF |
|---|---|---|---|---|---|
| 1 | CHECK | 4615 | | $104.00 | |
| | | | Total Payments: | $104.00 | |

THANK YOU

**Cause No. 236-295012-17**

| | | |
|---|---|---|
| MBH REAL ESTATE LLC, | § | IN THE DISTRICT COURT |
| AFI LOAN SERVICING, LLC, | § | |
| ANSON FINANCIAL, INC., | § | |
| J. MICHAEL FERGUSON, P.C. | § | |
|    Plaintiffs | § | |
| | § | |
| V. | § | 236TH JUDICIAL DISTRICT |
| | § | |
| IAN GHRIST, GHRIST LAW FIRM, PLLC, | § | |
| SHAWN COKER, NEIGHBORHOOD PARTNER, | § | |
| INC., BLUE MOON REALTY GROUP, LLC, | § | |
| WIZARD FUNDING, LLC, SILVER STAR TITLE | § | |
| , LLC DBA SENDERA TITLE, ELIZABETH | § | |
| ESPINO, KATHY E. MONTES, AND LUCY | § | |
| OLIVAS | § | |
|    Defendants | § | TARRANT COUNTY, TEXAS |

---

**DEFENDANTS' REQUEST TO OVERRULE PLAINTIFFS' VOLUMINOUS
EVIDENTIARY OBJECTIONS**

---

Plaintiffs' made the following evidentiary objections, which should be overruled:

PLAINTIFFS OBJECTIONS TO EXHIBIT A:
GHRISTS' RESPONSE TO TRADITIONAL AND NO EVIDENCE
MOTIONS FOR SUMMARY JUDGMENT IN CAUSE NO. 017-287611-16

1. Plaintiffs object to any use of Exhibit A attached to Defendants' Motion to Dismiss.

   Exhibit A is Ghrist and Ghrist Law Firm, PLLC's Response to Traditional and No

   Evidence Motions for Summary Judgment in Cause No. 017-287611-16. Plaintiffs

object to such Motion and to each attachment to the Motion on the basis that:

a. **Lack of Specificity:** Defendants do not identify any specific portion of the motion or any exhibits or portions of the exhibits to such motion to identify what is being offered, what the purpose of such offer is. *Upchurch v. Albear*, 5 S.W.3d 274, 294-85 (Tex.App. – Amarillo 1999, pet. Denied); *Gonzales v. Shing Wai Brass & Metal Wares Factory, Ltd.*, 190 S.W.3d 742, 746 (Tex.App. – San Antonio 2005, no pet.).

a. **Pleadings are Not Evidence:** It is well settled that pleadings are competent summary judgment evidence. *Laidlaw Waste Sys.v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995); and *Hidalgo v. Surety S&L Ass'n*, 462 S.W.2d 540, 545 (Tex.1971). A party cannot rely on factual statements contained in its own pleadings for summary judgment evidence even if the response is verified. See *Quanaim v. Frasco Rest. & Catering*, 17 S.W.3d 30, 42 (Tex.App.—Houston [14th Dist.] 2000, pet. Denied) and see *Webster v. Allstate Ins.*, 833 S.W.2d 747, 677 (Tex. 1979); and *Barrow v. Jack's Catfish Inn*, 641 S.W.2d 624, 625 (Tex.App.—Corpus Christi 1992, no writ).

b. **Irrelevant:** Cause No. 017-287611-16 is an unrelated matter to the claims made the basis of this lawsuit. The claims in this lawsuit are independent of the claims asserted in the other lawsuit. The claims involve additional unrelated parties to those in the Cause No. 017-287611-16, a different subject matter.

c. **Conclusory:** The summary judgment response is conclusory and self-serving and is not competent summary judgment evidence;

d. **Hearsay:** Exhibit A contains hearsay

a. **Best Evidence Rule:** The best evidence rule holds that the only competent evidence to prove the contest of the document is the document itself. Tex.R.Civ.E. 1004. See *Aetna Ins. Co. v. Klein*, 160 Tex. 61, 325 S.W.2d 376 (Tex. 1959); see also *Prudential Ins. Co. of America v. Black*, 572 S.W.2d 379, 380 (Tex.Civ.App. – Houston [14th Dist] 1978, no writ).

RESPONSE: These objections go to weight and credibility of the evidence, not admissibility, and the evidence was competent, authenticated, and not hearsay. Moreover, the best evidence rule was inapplicable as the affidavit did not try to prove the contents of documents and the documents themselves were offered.

**PLAINTIFFS OBJECTIONS TO EXHIBIT A (11-14-16 GHRIST AFFIDAVIT) ATTACHED TO GHRISTS' RESPONSE TO TRADITIONAL AND NO EVIDENCE MOTIONS FOR SUMMARY JUDGMENT IN CAUSE NO. 017-287611-16**

2. Plaintiffs object to any use of the 11-14-16 Ghrist Affidavit which is marked as "Exhibit A" and which is attached to "Exhibit A" is Ghrist and Ghrist Law Firm, PLLC's Response to Traditional and No Evidence Motions for Summary Judgment in Cause No. 017-287611-16. Plaintiffs object[1] to such 11-14-16 Ghrist Affidavit on each of the

following bases:

a. **¶2: Objections: Hearsay & Best Evidence:**
   1. Defendants object to the hearsay statements of Plaintiffs in ¶2 of Ghrist's affidavit which are hearsay and violate the best evidence rule.

b. **¶3: Objections: Conclusory, Best evidence Rule; Misleading, and Interested Witness Testimony.**
   1. Defendants object to ¶3 in its entirety as these allegations are mere conclusory statements unsupported by competent facts and are not competent summary judgment evidence. *Wadewitz v. Montgomery*, 951 S.W.2d 464, 467 (Tex.1997); **Brownlee v. Brownlee**, 665 S.W.2d 111, 112 (Tex. 1984). Legal conclusions not supported by facts will not support a summary judgment. See *Life Ins. Co. of Virginia v. Gar-Dal, Inc.* 570 S.W.2d 378, 381-82 (Tex. 1978) and see *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1992). Moreover, legal conclusions such as those being offered by Plaintiffs have no probative force and are not competent summary judgment evidence. *801 Nolana, Inc. v. RTC Mortg. Trust*, 944 S.W.2d 751, 754 (Tex.App.—Corpus Christi 1997, writ denied). Such statements are not competent summary judgment evidence because the affidavit fail to show how the affiant has personal knowledge and became familiar with the facts such to competently testify about such matters. *Villacana v. Campbell*, 929 S.W.2d 69, 74 (Tex.Civ.App.—Corpus Christi 1996, writ denied). Further, these allegations violate the best evidence rule and the parole evidence rule. The documents speak for themselves. Further, Defendants object to ¶3 as it violates the best evidence rule and misrepresents the content and terms of the agreements at issue in this matter as Plaintiffs are deliberating omitting key terms to such agreements to mislead this court.

c. **¶4: Objections: Conclusory, Best Evidence Rule, Misleading, and Interested Witness Testimony.**
   1. Defendants object to ¶4 because these allegations are mere conclusory statements unsupported by competent facts and are not competent summary judgment evidence. Further, Defendants object to ¶4 because these allegations violate the best evidence rule and are part of an effort to mislead the court about the terms of the agreement. The documents speak for themselves. Further, Defendants object to ¶4 as it misrepresents the content and terms of the agreements at issue in this matter as Plaintiffs are deliberating omitting key terms to such agreements to mislead this court.

d. **¶5 Conclusory and Irrelevant**
   1. Defendants object to the portion of Ian Ghrist Affidavit in ¶5 which asserts that he was a salaried employee of Anson Financial, Inc. Such claims are mere conclusions without supporting facts. Moreover, as is shown in Defendants' Response to Plaintiffs' Motions for Summary Judgment, Ghrist was an employee of Ferguson PC and at times a contract

PAGE 3

attorney hired by Ferguson PC. Ghrist was not of Anson Financial, Inc. Thus, Plaintiffs' affidavit is neither accurate or relevant. Ghrist was at times a salaried employee of J. Michael Ferguson, P.C. and at other times a contract attorney performing work for J. Michael Ferguson, P.C. and its clients. Therefore, such allegations are irrelevant and not competent summary judgment evidence.

e. ¶5 Conclusory, Incorrect, Irrelevant and Best Evidence Rule

1. Defendants object to Ghrist's conclusory allegations in ¶5 of his affidavit because the allegations are mere conclusions without supporting facts. Further, Defendants would show that Ghrist's allegations are not accurate. Therefore, Defendants object to ¶5 as the allegations are irrelevant. Defendants object to any affidavit of Plaintiff asserting the terms of the Separation Agreement as the same violates the best evidence rule. Further, Defendants object to allegations by Plaintiffs' to the effect that "Ferguson took 2/3 of these fees, after expenses, and I took 1/3" such allegations are irrelevant to determining what the terms of the Separation Agreement are as to the split of funds between Ferguson PC and Plaintiffs.

2. ¶5 Conclusory, Self-Serving, and Irrelevant allegations

   a) Defendants object to Plaintiffs' self-serving, conclusory and irrelevant allegations that: "*Anson Financial, Inc. thus, got an attorney on call at all time to handle whatever legal matter arose, which were numerous for such a small company, and top of that Ferguson earned income from the legal fees that I generated. Thus, Anson Financial, Inc. essentially got a general counsel on staff who could handle Anson Financial, Inc. matters and also generated income for Ferguson.*" As is shown in Defendants' Response to Plaintiffs' Motions for Summary Judgment, Ghrist was an employee of Ferguson PC and at times a contract attorney hired by Ferguson PC. Ghrist was not of Anson Financial, Inc. Thus, Plaintiffs' conclusory affidavit is neither accurate nor relevant. Further, Defendants object to Plaintiffs' inflated self-evaluation of his importance to the firm's operation as such opinions are not competent summary judgment evidence and are irrelevant to determining the rights and duties under the Separation Agreement.

3. ¶6: Vague and Conclusory

   a) Defendants object to ¶6 of Ian Ghrist's affidavit as the same is vague. Ghrist makes no reference to the "agreement" referred to in this paragraph. Further, Defendants object to the conclusory nature of the allegations set forth in ¶6 that "in reliance upon such agreement." As is pointed out above and shown in Defendants' response, Ghrist was a salaried employee of J. Michael Ferguson, P.C. As an at-will employee, Ghrist was not performing any duties in reliance upon Defendants. Ferguson PC had the right to terminate Ghrist at will and to assign him whatever work Ferguson

PAGE 4

Page 4 of 29

desired. However, the parties did enter into a specific Fee Sharing Agreement regarding certain projects.

4. **¶6 Conclusory, Self-serving and Irrelevant allegations**
   a) Defendants object to the conclusory and self-serving nature of the allegations in ¶6 of Ghrists affidavit that he put David Boles and his entities into receivership and seized a portfolio as receiver. Ghrist's references are self-serving and conclusory in nature as though he and he alone worked on the project and that he was not being told exactly what to do during every step of the process as Ghrist references in ¶8. As a result, such statements are irrelevant particularly because regardless of who did what, the Fee Sharing Agreement and Separation Agreement specify the rights and obligations of the parties.

5. **¶7: Objections: Conclusory**
   a) Defendants object to the allegations in ¶6 of Ian Ghrist's affidavit as it is nothing more than a mere conclusion. There are no facts or details provided to support the specific conclusions asserted by Plaintiffs.

6. **¶8 Objections: Conclusory and Irrelevant**
   a) Defendants object to the false, conclusory and irrelevant allegations in ¶8 that these are the only properties, in fact, that could arguably by owned by MBH Real Estate, LLC. MBH Real Estate, LLC has the ability to add other assets if it desired to do so, but those issues are not relevant to the matters in this lawsuit or the rights and obligations under the Separation Agreement.

7. **¶9 Objections: Conclusory, False, Misleading, Hearsay and Irrelevant**
   a) Defendants object to the entirety of ¶9 as the same is nothing more than the conclusory, unsupported, false allegations of Plaintiffs. The same are not competent summary judgment evidence. The same are merely efforts by Plaintiff to disparage Defendants' reputation by presenting hearsay statements, misleading and false allegations that are irrelevant to this matter.

8. **¶10 Objections: Conclusory and Irrelevant**
   a) Defendants object to Plaintiffs conclusory and irrelevant allegations in ¶10 of Ghrist's Affidavit. First, the allegations are not true. In his deposition, Ghrist confirmed that he never missed a paycheck from Ferguson.1 Second, any issues unrelated matters that have nothing to do with the Separation Agreement are irrelevant and are not admissible under Rules 401, 402, 403, 404(a)(1) of the Tex.R.Civ.E.. Third, Plaintiffs offers no facts in support of these claims, just conclusions.

9. **¶11 Objections: Best Evidence Rule, and Irrelevant**
   a) Defendants object to the irrelevant allegations in ¶10 of Ghrist's Affidavit as they violate the best evidence rule.

PAGE 5

10.    ¶11 Objections: Conclusory, Misleading and Interested Witness Testimony

a) Further, Defendants object to ¶11 as it is conclusory and misleading. As is shown in Defendants' Response to Plaintiffs' Motions for Summary Judgment, Defendants applied income generated from the Portfolio to the expenses owed by Plaintiffs to Defendants. Further, Defendants object to Plaintiffs' allegations as "Interested Witness Testimony" because these allegations are directly contradicted by Plaintiff himself in ¶12 of his own Affidavit. Thus, the Affidavit of Ghrist is not competent summary judgment evidence because it is "Interested Witness Testimony." However, the expenses exceeded the income, so Plaintiffs were not receiving payments.

11.    ¶11 Objections: Speculation

a) Defendants object to ¶11 which makes speculative comments about Ferguson's intent. Such statements are mere opinions and are not competent summary judgment evidence.

12.    ¶12 Objections: Conclusory, Irrelevant, and Interested Witness Testimony

a) Defendants object to ¶12 because it is conclusory and misleading as Defendants have actually been applying income to the expenses owed by Plaintiffs. Further, Plaintiffs' allegations are contradicted by Plaintiff himself in ¶12 of his own Affidavit. However, the expenses exceeded the income, so Plaintiffs were not receiving payments.

13.    ¶13 Objections: Speculation, Conclusory, Irrelevant and Misleading, Statute of Frauds

a) Defendants' object to ¶13 of Ghrist's Affidavit because the same are speculative, conclusory allegations that are misleading, and irrelevant and would violate the Statute of Frauds. Ghrist's claims that he has been wholly excluded from management and control of the Portfolio. Ghrist does not own the rights to control or to manage the Portfolio. He only has a right to receive a portion of income after expenses. Further, Ghrist does not have a right to object to efforts to sell the Portfolio. Ghrist failed to negotiate those rights. If those rights were important to him, as an attorney, he would know that those rights would need to be set forth in the agreement. He cannot claim or assert ownership rights to real property that are not found within the four corners of the agreement as that violates the statute of frauds. The statute of frauds exists to prevent fraud and perjury in certain kinds of transactions by requiring agreements to be set out in a writing signed by the parties." *Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex.2001). See **Tex.Bus.&Comm.Code** Sec. 26.01. Under the statute of frauds, certain contracts are not enforceable unless they

PAGE 6

are in writing and signed by the person against whom enforcement of the contract is sought. *Kalmus v. Oliver*, 390 S.W.3d 586, 589 (Tex. App. 2012). The statute of frauds states:

   b) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is:

      a. in writing; and

      b. signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.

14. **14 Objections: Statute of Frauds, Conclusory, Irrelevant and Misleading**

   a) Defendants object to ¶14 of Ghrist's Affidavit because the allegations violate the statute of frauds, and are conclusory in nature. Further, the conclusions are misleading and irrelevant and are therefore not competent summary judgment evidence. Ghrist is not an owner of the Portfolio. Ghrist merely owns a right to receive a portion of income generated as legal fees after expenses have been paid.

15. **¶14 Objections: Irrelevant, False and Conclusory**

   a) Defendants object to ¶14 of Ghrist's affidavit as it is an irrelevant, false statement. Ferguson does hold a valid Residential Mortgage Loan Servicer Registration. Ghrist's allegations are merely another example of false conclusory statements that have no relevance to the agreements that were reached between two attorneys on their law practices.

16. **Objections to ¶24-¶25: Irrelevant**

   a) Defendants object to the entirety of ¶24 and ¶25 of Ghrist's affidavit as the allegations are irrelevant.

RESPONSE: These objections go to weight and credibility of the evidence, not admissibility, and the evidence was competent, authenticated, and not hearsay. Moreover, the best evidence rule was inapplicable as the affidavit did not try to prove the contents of documents and the documents themselves were offered. Also, the interested witness rule only applies to plaintiff's traditional summary judgment motions that are based solely on the affidavit of an interested witness—obviously inapplicable here.

PLAINTIFFS OBJECTIONS TO EXHIBIT K ATTACHED TO
GHRISTS' RESPONSE TO TRADITIONAL AND NO EVIDENCE
MOTIONS FOR SUMMARY JUDGMENT IN CAUSE NO. 017-287611-16

3. Plaintiffs object to any use of Exhibit K (identified by Defendants as "Example Note Showing Course of Dealing of Parties with Respect to Contingent Fee Work") attached to Ghrist and Ghrist Law Firm, PLLC's Response to Traditional and No Evidence Motions for Summary Judgment in Cause No. 017-287611-16. Plaintiffs object to such Exhibit on the bases that the same is not relevant to the claims or defenses in this lawsuit.

RESPONSE: This exhibit was relevant to show the course of dealing between Ghrist and Ferguson, which helps explain the proper interpretation of the written separation agreement.

5. Plaintiffs object to any use of Exhibit N (identified by Defendants as "Bank Statement of

Ghrist Law Firm") attached to Ghrist and Ghrist Law Firm, PLLC's Response to

Traditional and No Evidence Motions for Summary Judgment in Cause No. 017-287611-

16. Plaintiffs object to such Exhibit on the bases that the documents are:

    a. Irrelevant;
    b. Unauthenticated; and
    c. Hearsay.

RESPONSE: The statement was authenticated by Ghrist's affidavit, also attached to the motion, was relevant to show the parties' course of dealing, and was a proved-up business record.

6. Plaintiffs object to any use of Exhibit O, the Affidavit of Se Hwan Lim a/k/a Brandon

Lim which is marked as "Exhibit O" and which is attached to Ghrist and Ghrist Law

Firm, PLLC's Response to Traditional and No Evidence Motions for Summary Judgment

in Cause No. 017-287611-16. Plaintiffs object[2] to such 11-14-16 Ghrist Affidavit on

each of the following bases the Affidavit:

   a. Are purely conclusory statements and is not supported by facts;
   b. Is based on speculation, not facts;
   c. Fails to link to the methodology he used to reach the conclusions he offers;
   d. The affidavit is based upon "facts" that are unintelligible and not capable of being understood such that the affidavit is therefore not based upon facts;
   e. The affidavit does not meet *Daubert* requirements because it is not relevant or reliable because Mr. Lim has:
      1. knowingly misclassified expenses (tax payments made concerning the Portfolio) as income generated by the Portfolio to reach a pre-determined conclusion.
      2. Mr. Lim has amazingly classified the $6,371.23 which Ghrist stole from MBH while he was serving as the turnover receiver for MBH as income to MBH. The inclusion of such stolen funds as "income" rather than as a loss is not a reliable method of calculating the income and fees generated by the Portfolio. Lim's inclusion of the stolen funds as "income" to MBH renders his opinions unreliable and irrelevant;
      3. Lim's affidavit and the documents attached thereto also fail to show that Mr. Lim has accounted for the $15,000 expressly required under the Separation Agreement[3] which The Law Office of J. Michael Ferguson, PC shall first collect plus any filing fees incurred in obtaining the original judgment plus interest on those funds. Lim's failure to show that he has accounted for these expenses renders his opinions unreliable and irrelevant;
      4. Lim's affidavit and the documents attached thereto also fail to show that Mr. Lim has accounted for the legal costs, filing fetes, costs, costs incurred in remodeling and marketing eh property and other expenses ("etc.") in obtaining the Deficiency Judgment on 6712 Plantation Rd., Forest Hill, Texas 76140 as expressly required under the Separation Agreement[4] which The Law Office of J. Michael Ferguson, PC. Lim's failure to show that he has accounted for these expenses renders his opinions unreliable and irrelevant;[5]
      5. Mr. Lim's affidavit and the documents attached thereto also fail to show that Mr. Lim has accounted over $18,000 in expenses which MBH paid to the State of Texas to satisfy a judgment lien which the State of Texas filed against the Dieffenwierth property included in the Portfolio. Lim's failure to show that he has accounted for these expenses renders his opinions unreliable and irrelevant;[6]

      6. Lim's affidavit and documents also fail to show that Mr. Lim has accounted for payment of the sum of $6,629.15 in expenses that were incurred by MBH to pay off a lien with superior priority so that MBH could protect its rights and interests in the property. Such payments are not income. They are expenses which must be properly and fully accounted for in the calculations of the income generated from the Portfolio.[7]
      7. Lim's affidavit also fails to show that he has accounted for $11,072.00 in charges related to Mr. Coker's taking of those funds from the Portfolio. Lim's failure to show that he has accounted for these expenses renders his opinions unreliable and irrelevant.[8]
   f. Lim's Affidavit is based upon unintelligible "facts" that do not meet Daubert standards because he refers to pages that cannot even be interpreted or read.

RESPONSE: These objections go to weight and credibility of the evidence, not admissibility, and the evidence was competent, authenticated, and not hearsay. Moreover, the best evidence rule was inapplicable as the affidavit did not try to prove the contents of documents and the documents themselves were offered. Also, the interested witness rule only applies to plaintiff's traditional summary judgment motions that are based solely on the affidavit of an interested witness—obviously inapplicable here.

PLAINTIFFS OBJECTIONS TO EXHIBIT P ATTACHED TO
GHRISTS' RESPONSE TO TRADITIONAL AND NO EVIDENCE
MOTIONS FOR SUMMARY JUDGMENT IN CAUSE NO. 017-287611-16

7. Plaintiffs object to any use of Exhibit P (identified by Defendants as "Motion to Apply Property to Judgment") attached to Ghrist and Ghrist Law Firm, PLLC's Response to Traditional and No Evidence Motions for Summary Judgment in Cause No. 017-287611-16. Plaintiffs object to such Exhibit on the bases that the same is not relevant to the claims or defenses in this lawsuit.

RESPONSE: Ferguson has alleged that Ghrist did not work on the recovery of all of the property that is the subject of the case and should not be paid for all of it. This exhibit proves that the disputed property was part of Ghrist's work as Ghrist drafted and filed the turnover motion and order, which resulted in the recovery of that property.

PLAINTIFFS OBJECTIONS TO EXHIBIT Q (9-28-17 GHRIST AFFIDAVIT) ATTACHED TO
GHRISTS' RESPONSE TO TRADITIONAL AND NO EVIDENCE
MOTIONS FOR SUMMARY JUDGMENT IN CAUSE NO. 017-287611-16

8. Plaintiffs object to any use of the 9-28-17 Ghrist Affidavit which is marked as "Exhibit Q" and which is attached to "Exhibit A" - Ghrist and Ghrist Law Firm, PLLC's Response to Traditional and No Evidence Motions for Summary Judgment in Cause No. 017-

287611-16. Plaintiffs object[9] to such 9-28-17 Ghrist Affidavit on each of the following bases:

a. **Interested Witness Testimony Under Rule 166a(c)**

1. Plaintiffs object to Plaintiffs' Affidavit is that of an "interested witness" which is not competent summary judgment evidence. This objection will be referred to herein "Interested Witness Testimony." Texas law is clear that testimony of an interested witness must be clear, positive, direct, credible, free from contradiction and inconsistencies and be readily controvertible to qualify as competent summary judgment evidence. See Rule 166a(c) of the Texas Rules of Civil Procedure. *Casso v. Brand*, 776 S.W.2d 551, 558 (Tex. 1998)

2. A classic example of where Ian Ghrist's Affidavit (Exhibit Q) is not clear, positive, direct, credible, free from contradiction and inconsistencies is found on Page 18 and Page 19 of Exhibit Q where Ian Ghrist swears under oath about the amount of money that he was allegedly owed as of July 31, 2017. As is shown below, in the span of 1 page within the same affidavit, Ian Ghrist contradicts his own sworn testimony about the amount of damages he calculates Plaintiffs are owed. Ghrist's affidavit inflates those unsupported claims from $52,682.91 to $68,881.67 for an increase in $16,198.76 in alleged damages.

   a) On Page 18, ¶11 of Exhibit Q, Ian Ghrist testifies under oath, under penalty of perjury as follows: **"I reviewed the same materials that Brandon Lim reviewed, and I have some personal knowledge from before Ferguson and I separated, and I concur that as of July 31ˢᵗ, 2017, the amount of cash income net of expenses and available for distribution from the MBH Portfolio was $395,220.62, and 13.33% of that amount would be *$52,682.91*."**

   b) On Page 19, ¶19 of Exhibit Q, Ian Ghrist testifies under oath, under penalty of perjury as follows: **"Furthermore, as of July 31ˢᵗ, 2017, the face value of the notes and the value of the mineral rights to me is $126,482.41. On that date [July 31, 2017], I was owed *$68,881.67*, not counting the self-**

dealing fees."

    c) These statements are irreconcilable. Both statements cannot be true. As a result, these statements found within Exhibit Q, the sworn affidavit of Ian Ghrist, show that as an interested witness, Mr. Ghrist's testimony is not competent summary judgment evidence because it is not clear, positive, direct, credible, free from contradiction and inconsistencies.

3.    In addition, Ghrist's Affidavit (**Exhibit Q**, ¶22) stumbled on the reason why his claims of ownership interest in MBH and the Portfolio fail. In ¶22 of Ghrist's Affidavit, he finally admits that the Separation Agreement only gave him an interest in the legal fees that were generated from the Portfolio. Ghrist's Affidavit states:

    a) "This whole dispute has become extremely convoluted due to the time that we both allowed to pass, due to nature of the assets recovered and due to the fact that there have been numerous transfers by Mr. Ferguson of the assets that were originally **acquired as payment *for legal fees* in the litigation.** However, it should be pointed out that Mr. Ferguson and I agree on the origin of this dispute. **I agree** with the first two sentences of Section, 4, Exhibit A, of Mr. Ferguson's affidavit. Specifically, when this started, we did agree that Ferguson would cover litigation expenses and *we would split the legal fees* earned from our jointly represented clients with 66.67% going to Ferguson and 33.33% going to me of the net recovery from those cases." (Emphasis added).

    b) Ghrist's Affidavit (**Exhibit Q**, ¶22) goes on to state, "Under our course of dealing and agreement, **I would recover a 1/3 percentage *of legal fees recovered*** regardless of whether the recovery was in cash, promissory notes, real estate, contractual rights, or anything else." (Emphasis added).

    c) These admissions confirm that Ghrist's only interest under the Separation Agreement is an interest in legal fees collected, not ownership rights in properties. Further, these admissions directly contradict the claims of Ghrist throughout his Response and his affidavits such that his affidavits are inconsistent and contradictory, and are not competent summary judgment evidence.

4.    Likewise, the affidavit of Ian Ghrist (**Exhibit Q**, ¶13) makes inconsistent and contradictory states which are far from direct, positive and clear, and which show that the affidavit of Ian Ghrist as an interested witness is a sham, is not credible, and is not competent summary judgment evidence. For example, in his affidavit, Mr. Ghrist alleges that he personally paid specific expenses, but then he contradicts himself and states that Ferguson paid those expenses because Ferguson reimbursed Plaintiff.

PAGE 12

b. **Sham Affidavit.**

1. When an affidavit such as Plaintiffs' affidavit is executed after the Plaintiffs' deposition and there is a clear contradiction on a material point without explanation, the *sham affidavit doctrine* may be applied and the contradictory statements in the affidavit may be disregarded. *See, e.g., Pando v. Sw. Convenience Stores, L.L.C.,* 242 S.W.3d 76, 79 (Tex.App.–Eastland 2007, no pet.); *Trestle v. Trestle,* 77 S.W.3d 908, 915 (Tex.App.–Amarillo 2002, no pet.); *Elson Thermoplastics,* 49 S.W.3d at 901; *Burkett v. Welborn,* 42 S.W.3d 282, 286 (Tex.App.–Texarkana 2001, no pet.); *Farroux v. Denny's Rests., Inc.,* 962 S.W.2d 108, 111 (Tex.App.–Houston [1st Dist.] 1997, no pet.).[5]

c. **Conclusory Statements**

1. Defendants object to Paragraph 2 of Exhibit O the second affidavit of Ian Ghrist because the same contains hearsay statements, irrelevant and vague statements, statements which violate the statute of frauds, and the best evidence rule.

d. **Hearsay, Irrelevant, and Conclusory statements**

1. Defendants object to Paragraph 3 of Exhibit O the second affidavit of Ian Ghrist because the same contains conclusory and hearsay statements, and irrelevant statements.

e. **Hearsay, Irrelevant, Vague, Statute of Frauds, Best Evidence, and Conclusory statements**

1. Defendants object to Paragraph 4 of Exhibit O the second affidavit of Ian Ghrist because the same contains hearsay statements, irrelevant and vague statements, statements which violate the statute of frauds, and the best evidence rule.

2. Further, the same includes merely conclusory statements, which are not competent evidence.

f. **Hearsay, Irrelevant, and Conclusory statements**

1. Defendants object to Paragraph 5 of Exhibit O the second affidavit of Ian Ghrist because the same contains hearsay statements, irrelevant statements.

2. Further, the same includes merely conclusory statements, which are not competent evidence.

g. **Hearsay, Irrelevant, Vague, Statute of Frauds, Best Evidence, and Conclusory statements**

1. Defendants object to Paragraph 6 of Exhibit O the second affidavit of Ian Ghrist because the same contains hearsay statements, irrelevant and vague statements, statements which violate the statute of frauds, and the best evidence rule.

2. Further, the same includes merely conclusory statements, which are not competent evidence.

h. **Speculation, Irrelevant, and Conclusory statements**
   1. Defendants object to Paragraph 7 of Exhibit O the second affidavit of Ian Ghrist because the same contains speculative and hearsay statements.
   2. Further, the same includes merely conclusory statements, which are not competent evidence.
i. **Hearsay, Irrelevant, Vague, Statute of Frauds, Best Evidence, and are Conclusory statements**
   1. Defendants object to Paragraph 8 of Exhibit O the second affidavit of Ian Ghrist because the same contains hearsay statements, irrelevant and vague statements, statements which violate the statute of frauds, and the best evidence rule.
   2. Further, the same includes merely conclusory statements, which are not competent evidence.

RESPONSE: These objections go to weight and credibility of the evidence, not admissibility, and the evidence was competent, authenticated, and not hearsay. Moreover, the best evidence rule was inapplicable as the affidavit did not try to prove the contents of documents and the documents themselves were offered. Also, the interested witness rule only applies to plaintiff's traditional summary judgment motions that are based solely on the affidavit of an interested witness—obviously inapplicable here.

PLAINTIFFS ADDITIONAL OBJECTIONS TO EXHIBIT Q (9-28-17 GHRIST AFFIDAVIT)
ATTACHED TO GHRISTS' RESPONSE TO TRADITIONAL AND NO EVIDENCE
MOTIONS FOR SUMMARY JUDGMENT IN CAUSE NO. 017-287611-16

9. Plaintiffs further object to Exhibit Q, Ian Ghrist's Affidavit. Plaintiffs also assert the following objections to the following Paragraphs (¶) of Ian Ghrist's Affidavit (Exhibit Q):

a. ¶3:
   i. OBJECTION: CONCLUSORY
   ii. OBJECTION: IRRELEVANT
   iii. OBJECTION: MISLEADING
   iv. OBJECTION: BEST EVIDENCE RULE

b. ¶4:
   i. OBJECTION: CONCLUSORY
   ii. OBJECTION: IRRELEVANT
   iii. OBJECTION: ARGUMENTATIVE
   iv. OBJECTION: HEARSAY
   v. OBJECTION: SPECULATION
   vi. OBJECTION: ASSUMES FACTS NOT IN EVIDENCE
   vii. OBJECTION: VAGUE
   viii. OBJECTION: BEST EVIDENCE RULE

c. ¶5:
   i. OBJECTION: IRRELEVANT
   ii. OBJECTION: ARGUMENTATIVE

      iii. OBJECTION: HEARSAY
      iv. OBJECTION: COMPROMISE OFFERS & NEGOTIATIONS

d. ¶6:

      i. OBJECTION: CONCLUSORY
      ii. OBJECTION: IRRELEVANT
      iii. OBJECTION: ARGUMENTATIVE
      iv. OBJECTION: BEST EVIDENCE RULE

e. ¶7:

      i. OBJECTION: CONCLUSORY
      ii. OBJECTION: IRRELEVANT
      iii. OBJECTION: ARGUMENTATIVE
      iv. OBJECTION: SPECULATION
      v. OBJECTION: NO FOUNDATION
      vi. OBJECTION: ASSUMES FACTS NOT IN EVIDENCE
      vii. OBJECTION: BEST EVIDENCE RULE
      viii. OBJECTION: STATUTE OF FRAUDS
      ix. OBJECTION: PAROLE EVIDENCE
      x. OBJECTION: COMPROMISE OFFERS & NEGOTIATIONS

f. ¶8:

      i. OBJECTION: CONCLUSORY
      ii. OBJECTION: IRRELEVANT
      iii. OBJECTION: ARGUMENTATIVE

g. ¶9:

      i. OBJECTION: CONCLUSORY
      ii. OBJECTION: IRRELEVANT
      iii. OBJECTION: ARGUMENTATIVE
      iv. OBJECTION: SPECULATION
      v. OBJECTION: NO FOUNDATION
      vi. OBJECTION: ASSUMES FACTS NOT IN EVIDENCE
      vii. OBJECTION: SHAM AFFIDAVIT
      viii. OBJECTION: MISLEADING

h. ¶10:

      i. OBJECTION: CONCLUSORY
      ii. OBJECTION: IRRELEVANT
      iii. OBJECTION: ARGUMENTATIVE
      iv. OBJECTION: SPECULATION
      v. OBJECTION: NO FOUNDATION
      vi. OBJECTION: ASSUMES FACTS NOT IN EVIDENCE
      vii. OBJECTION: SHAM AFFIDAVIT
      viii. OBJECTION: THE WITNESS IS NOT SHOWN TO BE QUALIFIED TO

RENDER AN EXPERT OPINION
ix. OBJECTION: MISLEADING

i. ¶11:

    i. OBJECTION: CONCLUSORY
    ii. OBJECTION: IRRELEVANT
    iii. OBJECTION: ARGUMENTATIVE
    iv. OBJECTION: SPECULATION
    v. OBJECTION: NO FOUNDATION
    vi. OBJECTION: ASSUMES FACTS NOT IN EVIDENCE
    vii. OBJECTION: VAGUE
    viii. OBJECTION: THE WITNESS IS NOT SHOWN TO BE QUALIFIED TO RENDER AN EXPERT OPINION

j. ¶12:

    i. OBJECTION: CONCLUSORY
    ii. OBJECTION: IRRELEVANT
    iii. OBJECTION: ARGUMENTATIVE
    iv. OBJECTION: HEARSAY
    v. OBJECTION: NO FOUNDATION
    vi. OBJECTION: ASSUMES FACTS NOT IN EVIDENCE
    vii. OBJECTION: THE WITNESS IS NOT SHOWN TO BE QUALIFIED TO RENDER AN EXPERT OPINION

k. ¶13:

    i. OBJECTION: CONCLUSORY
    ii. OBJECTION: IRRELEVANT
    iii. OBJECTION: ARGUMENTATIVE
    iv. OBJECTION: SPECULATION
    v. OBJECTION: NO FOUNDATION
    vi. OBJECTION: ASSUMES FACTS NOT IN EVIDENCE
    vii. OBJECTION: THE WITNESS IS NOT SHOWN TO BE QUALIFIED TO RENDER AN EXPERT OPINION
    viii. OBJECTION: MISLEADING
    ix. OBJECTION: EQUITABLE CLAIMS OF QUANTUM MERUIT ARE BARRED BECAUSE THEY ARE BASED ON WRITTEN CONTRACT
    x. OBJECTION: IRRELEVANT AND WANT OF CONSIDERATION.
        Plaintiffs object to the portion of ¶13 which asserts that Plaintiffs past work serves as consideration for the Separation Agreement.

PAGE 16

1. ¶14:

   i. OBJECTION: CONCLUSORY
   ii. OBJECTION: IRRELEVANT
   iii. OBJECTION: SPECULATION
   iv. OBJECTION: NO FOUNDATION
   v. OBJECTION: ASSUMES FACTS NOT IN EVIDENCE
   vi. OBJECTION: IRRELEVANT AND UNAUTHORIZED RELIEF:
       1. Plaintiffs object and specially except to the portion of ¶14 which requests this court impose a constructive trust, wind up the partnership, or to perform a judicial partition and to have a trustee appointed to perform any actions as this is not relief which is authorized under Rule 166a.
   vii. Objection: Irrelevant, Conclusory and Improper Calculation of Damages
       1. Plaintiffs further object to the portion of ¶14 which claims Plaintiffs' damages are its attorneys' fees. Texas law distinguishes between recovery of attorney's fees *as* actual damages and recovery of attorney's fees *incident to* recovery of other actual damages. Pursuant to well-settled law, a party may recover attorney's fees only as provided by statute or by contract. *Gulf States Utilities Co. v. Low*, 79 S.W.3d 561, 567 (Tex.2002); *see, e.g.*, Tex. Civ. Prac. & Rem.Code Ann. § 38.001(8) (authorizing recovery of attorney's pursuant to written or oral contract). Further, a party is not entitled to an attorney's fees *incident* to recovery unless the party independently recovers actual damages. *Low*, 79 S.W.3d at 567; *see, e.g., Green Int'l, Inc. v. Solis*, 951 S.W.2d, 238, 390 (Tex. 1997) (holding that a party must prevail on underlying claim for breach of contract in order to be entitled to attorney's fees pursuant to Tex. Civ. Prac. & Rem.Code Ann. § 38.001(8)).
       2. Attorney's fees are ordinarily not recoverable, therefore, *as* actual damages in and of themselves. *See Tana Oil & Gas Corp. v. McCall*, 104 S.W.3d 80, 81–82 (Tex.2003) (holding that attorneys, who sought to recover damages based *solely* on value of time and costs incurred in defending claims, had affirmatively precluded themselves of any recovery); *Qwest Communications Int'l, Inc. v. AT & T Corp.*, 114 S.W.3d 15, 32–33 (Tex.App.-Austin 2003), *rev'd in part on other grounds*, 167 S.W.3d 324 (Tex.2005).
       3. Further, Plaintiffs object to such claims as the allegations are conclusory as there is no showing as to what those alleged fees are or that such fees are reasonable and necessary.

m. ¶15:

     i. OBJECTION: CONCLUSORY
    ii. OBJECTION: IRRELEVANT
   iii. OBJECTION: ARGUMENTATIVE
   iv. OBJECTION: SPECULATION
    v. OBJECTION: NO FOUNDATION
   vi. OBJECTION: THE WITNESS IS NOT SHOWN TO BE QUALIFIED TO RENDER AN EXPERT OPINION
  vii. OBJECTION: MISLEADING

n. ¶16:

     i. OBJECTION: CONCLUSORY
    ii. OBJECTION: IRRELEVANT
   iii. OBJECTION: ARGUMENTATIVE
   iv. OBJECTION: HEARSAY
    v. OBJECTION: SPECULATION
   vi. OBJECTION: NO FOUNDATION
  vii. OBJECTION: ASSUMES FACTS NOT IN EVIDENCE
 viii. OBJECTION: THE WITNESS IS NOT SHOWN TO BE QUALIFIED TO RENDER AN EXPERT OPINION
   ix. OBJECTION: MISLEADING
    x. OBJECTION: BEST EVIDENCE RULE
   xi. OBJECTION: STATUTE OF FRAUDS
  xii. OBJECTION: PAROLE EVIDENCE

o. ¶17:

     i. OBJECTION: CONCLUSORY
    ii. OBJECTION: IRRELEVANT
   iii. OBJECTION: ARGUMENTATIVE
   iv. OBJECTION: HEARSAY
    v. OBJECTION: SPECULATION
   vi. OBJECTION: COMPROMISE OFFERS & NEGOTIATIONS

p. ¶18:

     i. OBJECTION: CONCLUSORY
    ii. OBJECTION: IRRELEVANT
   iii. OBJECTION: ARGUMENTATIVE
   iv. OBJECTION: HEARSAY

     v. OBJECTION: SPECULATION
    vi. OBJECTION: NO FOUNDATION
   vii. OBJECTION: ASSUMES FACTS NOT IN EVIDENCE
  viii. OBJECTION: BEST EVIDENCE RULE
    ix. OBJECTION: STATUTE OF FRAUDS
    x. OBJECTION: COMPROMISE OFFERS & NEGOTIATIONS

q. ¶19:

     i. OBJECTION: CONCLUSORY
    ii. OBJECTION: IRRELEVANT
   iii. OBJECTION: ARGUMENTATIVE
   iv. OBJECTION: SPECULATION
    v. OBJECTION: NO FOUNDATION
   vi. OBJECTION: ASSUMES FACTS NOT IN EVIDENCE
   vii. OBJECTION: SHAM AFFIDAVIT
  viii. OBJECTION: THE WITNESS IS NOT SHOWN TO BE QUALIFIED TO RENDER AN EXPERT OPINION
   ix. OBJECTION: MISLEADING
    x. OBJECTION: BEST EVIDENCE RULE
   xi. OBJECTION: STATUTE OF FRAUDS

r. ¶20:

     i. OBJECTION: CONCLUSORY
    ii. OBJECTION: IRRELEVANT
   iii. OBJECTION: ARGUMENTATIVE
   iv. OBJECTION: SPECULATION
    v. OBJECTION: NO FOUNDATION
   vi. OBJECTION: ASSUMES FACTS NOT IN EVIDENCE
   vii. OBJECTION: THE WITNESS IS NOT SHOWN TO BE QUALIFIED TO RENDER AN EXPERT OPINION
  viii. OBJECTION: BEST EVIDENCE RULE
   ix. OBJECTION: STATUTE OF FRAUDS

s. ¶21:

     i. OBJECTION: CONCLUSORY
    ii. OBJECTION: IRRELEVANT
   iii. OBJECTION: SPECULATION
   iv. OBJECTION: NO FOUNDATION
    v. OBJECTION: ASSUMES FACTS NOT IN EVIDENCE

PAGE 19

vi. OBJECTION: BEST EVIDENCE RULE
vii. OBJECTION: STATUTE OF FRAUDS


t. ¶22:

i. OBJECTION: CONCLUSORY
ii. OBJECTION: IRRELEVANT
iii. OBJECTION: ARGUMENTATIVE
iv. OBJECTION: HEARSAY
v. OBJECTION: SPECULATION
vi. OBJECTION: NO FOUNDATION
vii. OBJECTION: ASSUMES FACTS NOT IN EVIDENCE
viii. OBJECTION: SHAM AFFIDAVIT
ix. OBJECTION: THE WITNESS IS NOT SHOWN TO BE QUALIFIED TO RENDER AN EXPERT OPINION
x. OBJECTION: MISLEADING

RESPONSE: These objections go to weight and credibility of the evidence, not admissibility, and the evidence was competent, authenticated, and not hearsay. Moreover, the best evidence rule was inapplicable as the affidavit did not try to prove the contents of documents and the documents themselves were offered. Also, the interested witness rule only applies to plaintiff's traditional summary judgment motions that are based solely on the affidavit of an interested witness—obviously inapplicable here. Several objections raised here are not even evidentiary objections at all and are frivolous and intended to delay and annoy.

### GHRIST IS NOT QUALIFIED TO OFFER EXPERT TESTIMONY

10. Plaintiffs further object to the affidavits of Ian Ghrist because Ian Ghrist has not shown that he is qualified as an expert to render the opinions which he is offering.

a. The evidence fails to establish that Ghrist has sufficient knowledge skill, experience, training and education to be qualified as an expert. In particular, Ghrist has not shown himself to be qualified on the various subject matters to which his affidavits offer opinions in this matter. Those subject matters appear to include the following:

1. As a legal expert, including some type of litigation expert, real property expert;
2. As an expert regarding the duties of a turnover receiver;
3. As an expert in the field of forensic accounting;
4. As an expert real estate appraiser;
5. As an expert real estate marketer;
6. As an expert in the field of loan servicing; or
7. As an expert in the field of psychology. See Tex.R.Civ.E 702.

b. Even if a witness has some knowledge, skill, expertise, and training in a particular field, that is not sufficient to qualify the witness as an expert witness in a subject matter. *In re Commitment of Bohannan*, 388 S.W.3d 296, 304-305 (Tex. 2012); and *Broders v. Heise*, 924 S.W.2d 148, 152-53 (Tex. 1996); see also *Havner v. E-Z mart Stores*, 825 S.W.2d 456, 460 (Tex. 1992); and *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549 (Tex. 1995); and see *Taylor v. TDPRS*, 160 S.W.3d 641, 650 (Tex. App.—Austin 2005, pet. denied).

c. Further, Plaintiffs would show that the subject matters relevant to this case are technical matters such a real property law and accounting that are outside the areas in which a lay witness can offer opinion testimony under Rule 701. Therefore, Ghrist's opinions and efforts to label himself as an expert on such subject matters fails to meet the standards for expert testimony. As a result, his opinions are not competent summary judgment evidence and must be struck.

d. "In deciding whether an expert is qualified to offer an opinion, the trial court must determine that 'those who purport to be experts truly have expertise concerning the actual subject about which they are offering an opinion." *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W. 2d 713, 719 (Tex. 1998); See also *Broders v. Heise*, 924 S.W. 2d 148, 152 (Tex. 1996).

e. *Gammill* and *Broders* offer insight into the qualification requirement of TRE 702. The *Gammill* Court found that simply because a person was a mechanical engineer did not necessarily make that person qualified to render an opinion in complex products liability litigation. See *Gammill, supra*. Similarly, in *Broders*, the Texas Supreme Court held that just because a party is a physician does not

mean that individual is qualified to testify on the issue of causation in every case alleging medical malpractice. *See Broders, supra.* Clearly, the Texas courts and the Texas Rules of Evidence contemplate a situation in which an expert must possess more than simply a title or degree to be considered qualified to provide evidence in court. Thus, while Ghrist might have accumulated some knowledge in the 3 years since he became a licensed attorney on some of the matters referenced in his affidavit, his affidavit fails far short of establishing Ghrist as an expert in any subject matter.

RESPONSE: A lay witness can testify as to the value of his own property. Accordingly, it is irrelevant whether Ghrist qualifies as an expert. Ghrist does, however, in fact qualify as an expert.

**PLAINTIFFS OBJECTIONS TO EXHIBIT B:**
**J. MICHAEL FERGUSON, P.C., ANSON FINANCIAL, INC. AND MBH REAL ESTATE, LLC'S**
**FIRST AMENDED COUNTERCLAIM IN CAUSE NO. 017-287611-16**

11. Plaintiffs further object to Exhibit B, which is a copy of J. Michael Ferguson, P.C., Anson Financial, Inc., and MBH Real Estate, LLC's First Amended Counterclaim in Cause No. 017-287611-16 on the bases that the exhibit is;

   a. Irrelevant
   b. Has been superseded by an amended pleading. In fact, Defendants' Exhibit C to the Motion to Dismiss is a copy of J. Michael Ferguson, P.C., Anson Financial, Inc., and MBH Real Estate, LLC's First Amended Counterclaim in Cause No. 017-287611-16.

RESPONSE: Ferguson swore to these facts. Amending the pleadings does not mean that he did not previously make those statements under oath. The statements were relevant.

**PLAINTIFFS OBJECTIONS TO EXHIBIT C:**
**J. MICHAEL FERGUSON, P.C., ANSON FINANCIAL, INC. AND MBH REAL ESTATE, LLC'S**
**SECOND AMENDED COUNTERCLAIM IN CAUSE NO. 017-287611-16**

12. Plaintiffs further object to Exhibit C, which is a copy of J. Michael Ferguson, P.C., Anson Financial, Inc., and MBH Real Estate, LLC's Second Amended Counterclaim in Cause No. 017-287611-16 on the bases that the exhibit is irrelevant.

RESPONSE: How can Ferguson argue that his own pleading is not relevant? Why plead what was pled if it was not relevant?

**PLAINTIFFS OBJECTIONS TO EXHIBIT D:**
**OCTOBER 16, 2017 AFFIDAVIT OF IAN GHRIST**

13. Plaintiffs further object to Exhibit D, which is an October 16, 2017 Affidavit of Ian

a. General objections to the Affidavit: The affidavit is

1. Irrelevant;
2. Conclusory;
3. Merely a recitation of allegations in the pleadings to try to get around the rules of evidence that pleadings are not competent evidence.

b. Specific objections to Paragraphs within Exhibit D: Plaintiffs object to the following Paragraphs of Exhibit D because:

c. ¶2: Plaintiffs object to the conclusions and reference in ¶2 of Exhibit D to Emails in Exhibit E on the basis that these statements and the emails are:

1. Hearsay
2. Unauthenticated
3. Irrelevant
4. No Foundation
5. Conclusory

d. ¶3: Plaintiffs object to the conclusory and unsupported allegations in ¶3 of Exhibit D regarding the reasonableness and necessity of Defendants' attorney's fees as well as to the conclusory allegations concerning the novelty and difficulty of the questions involved, and the skill required to perform those services on the bases that the affidavit and alleged fees are:

1. Irrelevant
2. Excessive
3. The billing information is vague and does not clearly show what work was performed;
4. The billing does not segregate the work performed
5. The billing does not show who performed the work

e. ¶4: Plaintiffs object to the conclusory and unsupported allegations in ¶4 of Exhibit D regarding claims that Ghrist is "busy" solo practitioner with "a full docket" who "must turn work down due to time constraints" bases that the affidavit and alleged fees are:

1. Conclusory and
2. Vague

f. ¶5: Plaintiffs object to the conclusory and unsupported allegations in ¶5 of Exhibit D regarding Ghrist's qualifications, experience and fees as a 4-year lawyer on the bases that the affidavit and alleged fees are irrelevant.

PAGE 23

g. ¶6:     Plaintiffs object to the conclusory and unsupported allegations in ¶6 of Exhibit D regarding The time spent was reasonable on the bases that the affidavit and alleged fees are:

1. Excessive;
2. Associated with fraud committed by Defendants;
3. Relate to matters in the Motion to Dismiss to which:
   a) Are not involved in this lawsuit, but are related to a separate legal action;
   b) Defendants do not have standing to assert;
   c) No legal action has been brought against the Defendants;
   d) The TCPA does not apply including the Declaratory Judgment Action;
   e) Plaintiffs are exempt under the TCPA;
   f) Plaintiffs have clear and specific evidence to show a prima facie case; and
   g) Defendants do not have a valid defense.

h. ¶7: Plaintiffs object to the conclusory and unsupported allegations in ¶7 of Exhibit D regarding Ghrist's qualifications, experience and fees as a 4-year lawyer on the bases that the affidavit and alleged fees are

i. ¶8: Plaintiffs object to the conclusory and unsupported allegations in ¶8 of Exhibit D regarding the nature and length of his relationship to his client (himself) and his co-conspirator who are engaged in fraud is not a valid basis to award legal fees.

j. ¶9: Plaintiffs object to the conclusory and unsupported allegations in ¶9 of Exhibit D regarding the alleged reasonableness of fees given Ghrist's experience, reputation, and ability on the bases that the affidavit and alleged fees are excessive, and Mr. Ghrist's claims of experience are conclusory and fail to show his experience, and his reputation as a person who signs and advises others to sign fraudulent liens does not support the award of any legal fee.

PAGE 24

k.  ¶11 and ¶13: Plaintiffs object to the conclusory and unsupported allegations in ¶11 and ¶13 of Exhibit D regarding Ghrist's fees on the bases that the affidavit and alleged fees are:

1. Irrelevant
2. Excessive
3. The billing information is vague and does not clearly show what work was performed;
4. The billing does not segregate the work performed
5. The billing does not show who performed the work
6. Were expended in order to try to cover up his fraudulent acts;
7. And the affidavit shows that these fees and information are not actually being charged and that the information is true and correct and was not being kept at or near the time of the event as Paragraph 13 of Exhibit D indicates the amounts are merely estimates rather than accurate statements.

l.  ¶15 through ¶17: Plaintiffs object to the conclusory and unsupported allegations in ¶15 through ¶17 of Exhibit D regarding the lis pendens the bases that those matters are:

1. Irrelevant
2. Conclusory
3. Self-Serving
4. Misleading
5. Merely a copy and paste from Defendants' pleadings to try to make the allegations in the pleadings evidence to avoid the rule that pleadings are not evidence.

m.  ¶18: Plaintiffs object to the conclusory and unsupported allegations in ¶18 of Exhibit D regarding Ghrist's qualifications, experience and fees as a 4-year lawyer on the bases that the affidavit and alleged fees are;

1. Irrelevant
2. Conclusory
3. Self-Serving
4. Misleading
5. Merely a copy and paste from Defendants' pleadings to try to make the allegations in the pleadings evidence to avoid the rule that pleadings are not evidence.

PAGE 25

RESPONSE: These objections go to weight and credibility of the evidence, not admissibility, and the evidence was competent, authenticated, and not hearsay. Also, the interested witness rule only applies to plaintiff's traditional summary judgment motions that are based solely on the affidavit of an interested witness—obviously inapplicable here. Several objections raised here are not even evidentiary objections at all and are frivolous and intended to delay and annoy.

14. Plaintiffs further object to Exhibit E, which is claims to be copies of various emails from

different persons. Plaintiffs object to the following emails within Exhibit E:

1. Documents which proport to be email from Luisana Olivas dated
   a) January 31, 2017
   b) February 7, 2017
   c) February 8, 2017
   d) February 9, 2017
2. Document which proports to be email from Kathy Montes dated
   a) February 13, 2017
   b) February 14, 2017
3. Document which proports to be email from Elizabeth Espino:
   a) February 24, 2017
4. Emails from Ian Ghrist dated:
   a) January 7, 2017,
   b) January 8, 2017,
   c) February 14, 2017
   d) February 24, 2017
5. Email from Jessica Pinales dated:
   a) January 31, 2017
   b) February 1, 2017
   c) February 6, 2017
   d) February 14, 2017
6. Email from J. Michael Ferguson dated:
7. February 14, 2017 advising Sendera Title, Ms. Montes and Ms. Olivas that Ian Ghrist has no authority to sign on behalf of MBH Real Estate, LLC.

8. Further Plaintiffs' object to footnote 8 in Defendants' Motion to Dismiss and the emails referenced therein, except for the emails of Mr. Ferguson and Ms. Pinelas. Other than the emails of Ferguson and Pinelas, the emails in Exhibit E should be struck from the Motion to Dismiss.

b. Plaintiffs assert the following objections to the above listed emails in Exhibit E:
1. Irrelevant:

   a. Plaintiffs' object to these emails as being irrelevant.

   b. Defendants are attaching these emails in an attempt to change the

nature of the pleadings in this matter to mislead this court into thinking that this case involves matters which have not been pled by Plaintiffs. Here the Defendants attempt to inject allegations that Plaintiffs must be suing Defendants over every email and every communication between the Defendants. Plaintiffs' pleadings have not pled allegations related to every email or communication between the Defendants. This just an attempt to improperly expand the scope of the Plaintiffs' pleadings to make it appear as though this case involves issues related to first amendment rights because Defendants understand that communications of fraud and libel are not protected speech, and are not protected under the right of association or the right to petition.

2. **Hearsay:**

   a. Plaintiffs' object and specially except to this footnote and to the alleged emails from Luisana Olivas, Kathy Montes Elizabeth Espino as the same are hearsay.

3. **No Foundation:**

   a. Plaintiffs further object to Ian Ghrist's emails as the same make fraudulent and unfounded allegations. Further, the reference to these emails just a continuation of Defendants' efforts to misleading this court into thinking that this case involves matters which have not been pled by Plaintiffs. Here the Defendants attempt to inject allegations that Plaintiffs must be suing Defendants over email communications

between the Defendants. Plaintiffs' pleadings have not pled allegations related to every email or communication between the Defendants. This just an attempt to improperly expand the scope of the Plaintiffs' pleadings to make it appear as though this case involves issues related to first amendment rights because Defendants understand that communications of fraud and libel are not protected speech, and are not protected under the right of association or the right to petition.

RESPONSE: These objections go to weight and credibility of the evidence, not admissibility, and the evidence was competent, authenticated, and not hearsay. Also, the interested witness rule only applies to plaintiff's traditional summary judgment motions that are based solely on the affidavit of an interested witness—obviously inapplicable here. Several objections raised here are not even evidentiary objections at all and are frivolous and intended to delay and annoy.

PLAINTIFFS OBJECTIONS TO EXHIBIT F:
GHRISTS' FOURTH AMENDED PETITION IN CAUSE NO. 017-287611-16

15. Plaintiffs further object to Exhibit F, which is a copy of Ghrists' Fourth Amended

Petition in Cause No. 017-287611-16 on the bases that the exhibit is:

a. Irrelevant and
b. Pleadings do not constitute competent evidence, and
c. Is conclusory and self-serving.

RESPONSE: These objections go to weight and credibility of the evidence, not admissibility, and the evidence was competent, relevant, authenticated, and not hearsay.

Respectfully submitted,

Ghrist Law Firm PLLC


___/s/ Ian Ghrist_____
By: Ian Ghrist
SBOT No. 24073449
2735 Villa Creek Drive, Suite 250A
Farmers Branch, Texas 75234
Phone (817) 778-4136
Fax (817) 900-2863
ian@ghristlaw.com
Attorney for Ian Ghrist; Ghrist Law Firm,
PLLC; Shawn Coker; Neighborhood
Partner, Inc.; Blue Moon Realty Group,
LLC; and Wizard Funding, LLC